(93 South. 636)
### BARRETT et al. v. RIETTA et al.
### (6 Div. 547.)

(Supreme Court of Alabama. June 8, 1922.)

1. **Municipal corporations ⊂⇒63(1) — Courts will not set aside power to make regulations for public health unless power is transcended.**

The exercise of the power of a municipality to make regulations for the preservation of the public health will not be set aside or annulled by the courts, unless the power has been transcended.

2. **Evidence ⊂⇒32—Municipal ordinances judicially noticed.**

Under Gen. Acts 1915, p. 297, § 7, municipal ordinances will be judicially noticed.

3. **Injunction ⊂⇒105(1)—Will not lie to restrain arrest for daily infraction of valid ordinance.**

An injunction will not lie to restrain repeated arrests for failure to observe daily the exactions of a valid ordinance.

4. **Food ⊂⇒1—City may enact ordinances to prevent public consumption of food exposed to dust and flies.**

The power granted to a municipality by Code 1907, § 1251, to preserve the public health, comprehends the authority to enact ordinances to protect public consumption from the consequences of articles of food that may be infected through exposure to dust and flies.

5. **Food ⊂⇒1—Ordinances regulating sale of food held valid.**

Under Code 1907, § 1251, empowering municipalities to preserve public health and to regulate places where food is sold, municipal ordinances, providing that food offered for sale must be kept indoors, and places where food is sold must be screened, and that contaminated or adulterated food shall not be sold, are valid.

Appeal from Circuit Court, Jefferson County; Hugh A. Locke, Judge.

Bill by Frank Rietta and others against N. A. Barrett and others to enjoin enforce-

---

⊂⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

ment of city ordinances. From a decree overruling demurrers to the bill, respondents appeal. Reversed and remanded.

Sections 1099, 1101, and 1119 of the Code of the city of Birmingham read as follows:

"Sec. 1099. *Contaminated or Adulterated Food not to be Sold.* It shall be unlawful to sell or offer for sale any contaminated, adulterated or unfit food intended for human consumption or any food which has been exposed to dust, flies or vermin."

"Sec. 1101. *Openings to be Screened.* It shall be unlawful to keep, maintain, operate or conduct any kitchen or any restaurant, café, lunch stand or any candy factory or ice-cream factory or grocery store, fish market, meat market, bakery or any other place where food, milk, ices or beverages are manufactured, prepared or served, unless all of the doors, windows or other openings shall be fitted with proper screens covered with wire not coarser than fourteen mesh wire gauze and all such screen doors shall be so hanged as to open outward, provided, however, that such screen doors may be kept open if electric fans are effectually used, and provided such electric fans shall effectually prevent flies from coming into such place of business. Open fronts of buildings shall not be considered as doors."

"Sec. 1119. *Food Must be Kept Inside of Doors.* It shall be unlawful for any person, firm, association or corporation to maintain, conduct, carry on or manage a meat market, poultry store, delicatessen store, fish market or bakery store or store offering fruits or vegetables eaten raw, where food is offered for sale or disposed of for human consumption unless the food which is offered for sale or disposed of is kept within the doors of the store or place where said business is maintained, conducted, carried on or managed, and all doors, windows or other openings shall be at all times kept closed or covered with wire screening as hereinbefore provided."

W. J. Wynn and W. M. Woodall, both of Birmingham, for appellants.

Where municipal ordinance is valid, a bill to restrain its enforcement by arrest is without equity. 140 Ala. 590, 37 South. 173; 61 South. 920; 52 Ala. 209; 203 Ala. 103, 82 South. 117; 152 Ala. 391, 44 South. 663; 118 Ala: 362, 24 South. 450; 200 Ala. 15, 75 South. 327; 22 Cyc. 892. Arrests for each separate violation of an ordinance are authorized. 118 Ala. 362, 24 South. 450; 50 S. E. 61; 90 Mo. App. 169; (Tex. Cr. R.) 72 S. W. 856; 117 La. 136, 41 South. 442; 84 South. 860.

Weatherly, Birch & Hickman, of Birmingham, for appellees.

Section 1099 of the City Code of Birmingham is unconstitutional and void. 149 Ala. 311, 42 South. 1000, 9 L. R. A. (N. S.) 659, 123 Am. St. Rep. 33, 13 Ann. Cas. 651; 150 Ala. 259, 43 South. 706; 8 Ala. App. 471, 62 South. 958; 80 Ala. 579, 2 South. 725, 60 Am. Rep. 130. The use of fans in place of screens was a compliance with the law. 55 Ala. 198.

The order of the court restraining repeated arrests was legal and proper. 118 Ala. 362, 24 South. 450; 181 Ala. 308, 61 South. 920, 45 L. R. A. (N. S.) 575; 150 Ala. 259, 43 South. 706; 22 Cyc. 764.

McCLELLAN, J. [1] The bill in this cause, later amended, was filed by Rietta and numerous other "fruit and fresh vegetable" retail dealers in the city of Birmingham against the city commissioners of that municipality and Dr. J. D. Dowling, the health officer. The amended bill's design is to invoke equity's injunctive process to restrain these authorities or officers from enforcing sections 1099, 1101, and 1119 of the Code of the city of Birmingham, upon the theory that such sections, for the violation of which penalties are imposed, are invalid, and also to restrain the municipal authorities from effecting repeated arrests of any of complainants (appellees) for the failure to observe for "one day" the exactions of these sections, or any of them. These sections of the City Code are reproduced at length in the report of the appeal. As appears, these sections are manifestations of the police power in an effort to preserve the health of the city of Birmingham through municipal regulation of the places of sale of articles of food. The abstract authority of this municipality to exercise such power, within legal limits, is not disputed. Indeed, Alabama's Code 1907, § 1279, confers, among other powers, on municipalities the authority "to regulate the sale of meats, vegetables, fruits, and other articles, and to prescribe the localities and houses in which the same may be sold." To the same effect is the city charter of 1899 (Weakley's Laws, etc., p. 160). The exercise of the authority delegated to or conferred upon municipalities to ordain in aid of the preservation of the public health "the courts" will not set aside or annul, "unless the power has been manifestly transcended." Ehrenreich's Case, 80 Ala. 579, 581, 2 South. 725, 726 (60 Am. Rep. 130), among others.

[2] In ruling on the respondents' demurrers, addressed to the amended bill as a whole, the court below recited its opinion that these sections of the City Code were valid, but in the decree the demurrers were overruled. This action of the court invested the respondents with a right of appeal, notwithstanding the court's recital of its opinion that the sections were valid. Evidently, the basis of the court's view was that the amended bill possessed equity in the aspect it sought injunctive relief against repeated arrests (for daily violations of the sections in question), the complainants having been already arrested, tried, and convicted in the recorder's court, and an appeal taken to the circuit court by them. Aside from the question, projected by the demurrers, of the equity of the amend-

ed bill as an unjustified effort to enjoin the enforcement of city ordinances—to which inquiry we will later come—the amended bill is without equity in the aspect that it seeks restraint of the municipal authorities to effect repeated arrests for daily failures to observe the ordinances involved. Section 699 of the City Code provides that when the prohibited act or omission of enjoined duty is "of a continuous character," the penalties prescribed shall "apply to each and every day's continuance thereof," thus constituting a "day's" infraction a distinct offense in such cases. Section 700 invests the court with power to elect under which one of the two or more applicable ordinances the prosecution shall proceed. Notice of the ordinances, etc., of Birmingham is taken by the courts. Gen. Acts 1915, p. 297, § 7. That this municipality had and has authority to define offenses within the municipal power and to impose penalties therefor is clear. Ala. Code 1907, § 1251; Weakley's Laws of Jefferson County, pp. 158, 159, 160 (Charter approved February 23, 1899).

[3] Given the valid exercise of the authority to define offenses of the present nature, and to penalize infractions thereof, the ascription of a completed, distinct offense to each day's failure to observe the municipal mandate is, manifestly, a valid exercise of the power conferred. The theory upon which the court below appears to have overruled the demurrers, stated before, cannot be supported. Of course, where distinct offenses are validly created and defined arrests may be made for each infraction; and equity's processes cannot be invoked to restrain municipal exertion of its power to enforce valid penal laws on the ground that for another, distinct (as measured by a day's dereliction) offense, though identical in nature, the offender has been previously arrested, tried, and convicted. No such immunity of an offender can be predicated of the offender's own wrong.

According to the authority of Brown v. Birmingham, 140 Ala. 590, 37 South. 173; Board of Commissioners, etc., v. Orr, 181 Ala. 308, 318, 319, 61 South. 920, 45 L. R. A. (N. S.) 575, among others in that line, the amended bill is without equity. It is an effort to enjoin the enforcement of the municipality's valid penal enactments without introducing any factor that would invite interference by a court of equity through injunctive process.

It further appears from the amended bill that the validity vel non of these sections of the City Code, or any one of them, was open to contest on the appeals to the circuit court mentioned in the bill. Likewise, the inquiry whether they were applicable to the character of act or omission with which the defendants there were charged.

[4] The capacity of "dust" and "flies" to transmit or to disseminate disease germs or other infectious matter is generally appreciated. The municipal police power to preserve the public health comprehends the authority to enact ordinances to protect public consumption from the harmful or hazardous consequences of articles of food that may become infected through exposure to "dust" and "flies." The subject of health menace with which these sections deal has received consideration in State v. O'Connor, 115 Minn. 339, 132 N. W. 303, 35 L. R. A. (N. S.) 1112, Ann Cas. 1912D, 955; State v. Normand, 76 N. H. 541, 85 Atl. 899, Ann. Cas. 1913E, 996; Hawaii v. Hop Kee, 21 Hawaii, 206, Ann. Cas. 1915D, 1082. These decisions are well considered. In 11 R. C. L. p. 1103, the text is:

"The Legislature undoubtedly has power to protect articles of food from being exposed where they will accumulate the germ-laden dust of the streets or permit contact with flies. In view of the well-recognized medical facts that the germs of disease are distributed by flies when they come in contact with food designed for human consumption, such as loaves of bread, and that disorders are often traced to that cause, it is clear that a statute of this character has direct reference to the public health," and is a valid exercise of the police power. If the Legislature efficiently delegates to municipalities this preservative police power, the municipalities may, through appropriate ordinances, exercise the power as effectually as the Legislature itself may have done. The regulations considered in the cases cited ante were sustained, thus further confirming the observation (11 R. C. L. p. 1103) that—

"The tendency of the courts as well as the Legislature is to favor such legislation, and seldom have food laws been held invalid."

[5] Section 1099 of the City Code forbids the sale or offer for sale of contaminated, etc., food intended for human consumption, "or any food which has been exposed to dust, flies or vermin." The alternative clause quoted must, we think, be referred to "any food" that has been so exposed while under the control or possession of the offender. This clause was not intended to penalize a dealer for exposures to dust, flies, or vermin that had been accomplished before such food came into the possession or under the control of the local dealer. Of course, "contaminated, adultered or unfit" food is forbidden sale or offer to sale by the preceding provisions of the section; hence our conclusion that the section (1099) is not unreasonable, oppressive, or otherwise invalid as imposing irrational restraint upon the sale of foods. Section 1101 provides for the screening of openings

in the places therein defined. The design of this section is to exclude flies from contact with articles of food. Whether the screening therein prescribed is a wiser or better expedient than some others suggested in the brief for appellees is a matter that was determined by the municipal government through section 1101, in the exercise of the discretion with which that government is vested. It is certainly not an unreasonable requirement.

Considering sections 1099 and 1101 together—they are obviously related—it is manifest that the city government proposed to select, and did select, the means for excluding flies from contact with foods susceptible to their contaminating presence. Having prescribed the means to this end with definiteness, it is not to be supposed that it was intended to impose upon the dealer the obligation or burden of excluding absolutely all flies, or completely removing foods from exposure to any flies—this as a condition to the right to sell or to offer for sale such foods. Like considerations forbid a construction that would impose upon the dealer the guaranty, in effect, that the electric fans permitted (in contingencies) to be used should invariably completely prevent flies from entering such places of business. The exposure to flies that these sections inhibit is not an exposure that contemplates perfect immunity from contact with flies. The inhibited exposure is that which results from failure to observe the provisions of section 1101 or that which results from unnecessary or unreasonable subjection of articles of food to the contact of flies. So construed, these sections are valid.

Section 1119 requires foods sold or offered for sale to be kept indoors, and the doors closed or the openings screened as provided in section 1101. This requirement that foods shall be kept inside the building is a reasonable regulation. Its design is to avoid the contaminating effect of dust and flies, an obviously reasonable precaution; and this section is valid.

Whether sections 1099, 1101, and 1119 of the City Code have been superseded by Ordinance No. 687C as amended by Ordinance No. 763C is not a question for consideration on this appeal, since the amended bill's theory is that sections 1099, 1101, and 1119 of the City Code are invalid. These sections being valid, a bill to enjoin their enforcement is without equity. Montgomery v. Orpheum Taxi Co., 203 Ala. 103, 82 South. 117.

The decree appealed from is reversed, and the cause is remanded.

Reversed and remanded.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.