CONTINENTAL HOMES OF CHICAGO, INC., *et al.*, Plaintiffs-Appellants, *v.* THE COUNTY OF LAKE, Defendant-Appellee.—(THE VILLAGE OF MUNDELEIN, Intervenor Defendant-Appellee.)

Second District (1st Division)   No. 75-18

Opinion filed April 23, 1976.

Martin J. Oberman and Richard L. Wexler, both of Taussig, Wexler & Shaw, of Chicago, for appellants.

Jack Hoogasian, State's Attorney, of Waukegan (Michael Sieman, Assistant State's Attorney, and Charles F. Marino, of counsel), for appellee.

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

Plaintiffs appeal from a judgment which upheld the existing zoning of their 331-acre tract classified partly Agricultural and partly Suburban Residential. They contend that the court erred in refusing to grant their request for an amendment to the UR—3 A classification with a Conditional Use permit for a Planned Unit Development. They also contend that the court erred in permitting the Village of Mundelein to intervene as a party to the litigation involving the validity of the County Zoning Ordinance and in permitting the County to withdraw an admission of fact.

The proposed development lies between Route 176 and Hawley Road approximately a quarter of a mile west of the westerly boundary of the Village of Mundelein. Under the present Lake County zoning classification building lot sizes are restricted to a minimum of 200,000 square feet in a portion of the property and 40,000 square feet in other portions. Plaintiffs' proposed planned unit development consists of approximately 1,500 dwelling units including 31 homes to be constructed on one-acre lots, 37 homes to be constructed on one-half acre lots, 326 homes to be constructed on 7,200 square foot lots, 780 town houses and 359 apartments. In addition, a community center with enclosed shopping facilities is provided as well as at least 72 acres of open space and for school sites.

On March 13, 1973, plaintiffs filed the application to amend the present zoning and for the issuance of the conditional use permit. They submitted an outline development plan and a preliminary development plan to the Lake County Regional Planning Commission (LCRPC) as provided in the Lake County Zoning Ordinance. The LCRPC approved plaintiffs' proposal conditioned on their satisfying 23 stated conditions. The plaintiffs agreed to the conditions.

Following a public hearing, the Lake County Zoning Board of Appeals unanimously accepted the recommendations of the LCRPC and approved plaintiffs' development plan subject to 18 stated conditions. Plaintiffs agree to satisfy all conditions set forth by both the Regional Planning Commission and the County Zoning Board of Appeals.

Thereafter the Village of Mundelein filed a written protest which mandated a three-fourths majority vote of the Lake County Board of Supervisors for approval of the application (Ill. Rev. Stat. 1973, ch. 34,

par. 3158). The Lake County Board voted to approve the special use permit by a vote of 15 to 7. Since this was short of the three-fourths majority the application was denied. This suit followed.

On the date the action was set for trial the Village of Mundelein filed a petition to intervene. The Village was permitted to intervene as a party defendant over the plaintiffs' objections, but on the conditions that it not raise any new issues and that it stand on the answer filed by the defendant County of Lake.

At trial Norman Drummond, an expert planner, testified for the plaintiffs. He stated that to the northeast of the subject property a commercial development was being undertaken on 35-50 acres; that the remainder of the land surrounding the subject property is vacant and unimproved except for the Countryside Golf Course to the east; that a small commercial shopping development had been constructed in the vicinity near the intersection of Routes 83 and 176; and that other vacant property in the vicinity was being proposed for development for various types of housing. He admitted that the only concentration of housing in Fremont Township presently is around Sylvan Lake other than the part which lies in the Village of Mundelein.He noted that the one-acre lot deed restrictions which covered the Countryside area also applied to a part of the proposed development which fronts on that area. On cross-examination he admitted that the one-acre lot deed restrictions cover an area of four or five hundred acres in the vicinity. He testified that none of the proposed developments could be undertaken under the existing zoning category. He further testified that the subject property could not be developed feasibly under the existing zoning, which required on-site sewage disposal systems, because the soil was not suitable. He also stated that development of one-acre lots on approximately one-fourth of the property and 5-acre lots on the balance would be a wasteful use of land. He gave his opinion that the property should be developed as a planned development rather than a conventional subdivision; and that the highest and best use would be for a residential development preferably of mixed housing types at approximately the density proposed. He described the design of the proposed development and stated that it would have no adverse effect on the living conditions in the area because it related with it and because it would include a complete system of utilities and public facilities which are presently absent from the area generally. He noted that the development had been designed to discourage through traffic and stated that the traffic generated by the development would have no impact on traffic on the local streets in the Village of Mundelein. He also noted that a proposed expressway, Route 53, was to be built about three-fourths of a mile from the subject property.

On cross-examination he admitted that the traffic pattern coming from

the proposed development onto either Route 176 or Hawley Road would be essentially going east and very little traffic would be generated to the west; that the railroad station for commuter trains, the tollroad, the Hawthorn shopping center and the shopping areas in Mundelein and Libertyville are to the east of the proposed development; that the great majority of traffic would move east along Hawley Road and Route 176 for at least as far as Routes 83 and 60 and then would go either north or south or directly through Mundelein along Hawley Road or Route 176.

Joseph W. Rezek testified for plaintiffs after being qualified as an expert consulting civil engineer. He said that an adequate water supply could be obtained from the wells constructed within the development and that a proper sanitary sewer system could be constructed which would meet all requirements. He said that the runoff from the land in its developed state would not exceed an equivalent runoff in its present state and stated that the subject property has no flood problems. He concluded that there would be no adverse effect on the public health and safety.

Edward F. Havlik, qualified as an expert witness in the area of marketing and sale of housing, testified on behalf of plaintiffs. He said that the population generated by the proposed development would be between 3,850 and 3,931 persons and that after the development had matured over a period of years the population would be between 5,800 and 5,900 persons. He said that the population generated by the development would equal between 2.7% and 4% of the total population growth of the Libertyville and Mundelein township areas and that the student population would not reach the maximum projected by the school district for a substantial period of time.

Edward J. Greenberg and Larry Mayer, both licensed real estate brokers, also testified for the plaintiffs. Greenberg stated that two pieces of property adjacent to the subject property, referred to as the "Campbell" property and the "Miller" property, are proposed to be developed but not under the existing zoning. He testified that the subject property is surrounded by farm land, a golf course, a residential subdivision and "a strip shopping center." He gave his opinion that the highest and best use would be a moderate density residential development somewhere between seven to nine units per acre, taking into account the cost of bringing in sewer and water and utilities as well as the configuration of the property. He testified that the value of the property as presently zoned is between $1,100 and $1,400 per acre and that its value if rezoned as requested would be $12,000 per acre. In his opinion the proposed development would increase the value of nearby property and would not hinder farming on adjacent properties.

Mayer testified that none of the properties in the area were being developed on the existing zoning; that the highest and best use was a mid-

density residential development as proposed, and that the logical density would be somewhere in the area of six to eight units per acre. He described the proposed development as a transitorial density between the "Aspergen" development 2- and 4-acre estates) and the existing density as zoned in Mundelein of the "Huntington" development and the requested "Miller" development. He said that the proposed development would increase the value of nearby property. He also placed the value of the subject property between $1,100 and $1,300 per acre as presently zoned. He concluded that Fremont Township is no longer a farming township and that the property being purchased in that area was primarily for future near-term development to some extent and for investment for long-term future development.

The County of Lake presented the testimony of Nels Havens, the Superintendent of the Mundelein High School District. Havens testified that the school district had signed an agreement with plaintiffs providing for a donation of land, or cash in lieu of land for a high school and an amount of money to be paid to the school district at the time of occupancy. The school district valued the property to be donated at $14,000 per acre. Ludwig H. Koepke, Superintendent of the Fremont School District, also testified for the County and stated that his district had signed an agreement similar to the high school site agreement. He stated that the agreement reduced the impact of the school population generated by the proposed development.

The intervenor, Village of Mundelein, called Allen Kracower who was qualified as an expert city planning consultant. He did not agree with the planning of the proposed development. Particularly he testified that the proposed development contained an inadequate amount of usable recreational space and that the density in certain portions was too great. He acknowledged that the proposed development is in accord with the open space standards of the National Recreational and Park Association and that these standards are accepted by most planners but said that he did not accept them. Over objection he testified that the proposed development was not coordinated with other proposed developments in the area. He said he agreed with the conclusion of the Lake County Soil and Water Conservation District that the proposed development was not in conflict with the proper use of natural resources. He said that he had no opinion as to whether the subject property could be economically developed under the existing zoning. He stated that there was a need for housing in Lake County but said that the proposed development would not help satisfy that need. He testified that the highest and best use of the property would be low-density residential land use of 5-acre lots down to ½-acre lots.

Kracower, although he stated that he was not a traffic engineer, was

permitted over objection to give his opinion that there were serious traffic implications which would result from the development taken together with the proposed development of other nearby properties. He said that the internal traffic patterns of this development were not well planned. He said he could not agree or disagree with the conclusion of the staff of the Regional Planning Commission that "Principal vehicular access has been provided in such a manner as to encourage smooth traffic flow" because he did not have a study submitted. He also could give no opinion as to whether the traffic which he had estimated for the development would have an impact upon safety. He estimated that based on studies done by the Chicago area transportation study there would be an estimated 5 to 8 vehicle trips a day per dwelling unit multiplied by the number of units which would produce from 7,000 to 10,000 vehicle trips a day that would either get out onto Route 176 or Hawley Road. Although the witness stated he was not an expert on fire protection he was allowed over objection to give his opinion that the design of the development is hazardous to the proper service by emergency fire vehicles.

The mayor of the Village of Mundelein, Maurice Noll, also testified for the intervenor. He said that, generally, the proposed development would create a traffic problem for the Village and that the trustees opposed it because the development of an urban society on the immediate border of the Village would put a demand on the public works department and the police and fire protection department of the municipality. He said that the traffic output would pass almost totally through the Village of Mundelein either on the northern limits or southern limits.

There was evidence that the staff report submitted to the members of the Lake County Regional Planning Commission recommended that the development should be disapproved because the general location was in an area proposed for low intensity development. This conclusion was based on developmental policy set forth in the comprehensive general plan for northeastern Illinois and, in general, the 1969 interim plan which recognized that developments of this scale should locate within development corridors close to mass transportation. It also based its recommendation on lack of adequate public facilities. This staff report, however, was rejected by the Commission and its recommendation was based upon a substituted staff report.

The Commission report recommended the proposed development upon the satisfaction of the stated conditions. The Commission in reaching its finding had before it the Lake County interim plan of 1969. The northeastern Illinois comprehensive plan was not introduced into evidence.

In denying relief to the plaintiffs the court in its memorandum opinion stated:

"The court has carefully reviewed and weighed all the evidence in this case and while there is considerable evidence supporting the feasibility and the advantages of plaintiffs' planned use of the land, the evidence is clear that a development of this size and extent must have a decided impact on the surrounding areas. On such critical matters as transportation, traffic patterns, sewage disposal, schools, police and fire protection, the evidence adduced by the plaintiffs does not sustain their burden to show that the present zoning as applied to the plaintiffs' property is unreasonable and arbitrary and not without substantial relation to public health, safety and welfare.

Further in the general area involved in this case, to wit—the area generally adjacent to and west of the Village of Mundelein a decision must be [*sic*] as to when this area is to be opened to more intensive urbanization. The court is well aware from evidence introduced in this case that numerous other properties exist in this area all of which are in the same or similar state of prospective urban development. Many of these properties are or will be seeking rezoning of a nature somewhat similar to that sought in this case. The task of deciding whether one or more or how many of these properties should be rezoned and when and for what purpose is a decision that should be made as part of a comprehensive plan for the entire area.

*  *  *

[T]he court finds that the evidence in this case does not overcome the presumption of validity of the zoning ordinance."

Plaintiffs argue that the court ignored many of the well established zoning standards and that the evidence is sufficient to satisfy their burden of proving that the County zoning ordinance is invalid as to their property. They further claim that the presumption of the validity of the legislative action in passing the ordinance is weakened in view of the fact that they received approval from the Regional Planning Commission, the Zoning Board of Appeals and from a 15-7 majority of County Board, and were only defeated because of the three-fourths procedural regulation. The defendants respond that the presumption of validity fully exists and has not been overcome by the proof.

■■■ The traditional tests under which zoning determinations are reviewed include in general terms, the character of the neighborhood as shown by existing uses and zoning of nearby property, the extent to which surrounding property will be depreciated by the proposed use, and the extent to which the destruction of the value of the plaintiffs' property is required by considerations of the public interest in promoting the health, safety and welfare of the community (which includes

consideration of the care which the public has undertaken in planning its development and the needs of the community). (See, *e.g., La Salle National Bank v. County of Cook,* 12 Ill. 2d 40, 46-47 (1957); *Kraegel v. Village of Wood Dale,* 10 Ill. App. 3d 486, 491 (1973); *La Salle National Bank v. County of Lake,* 27 Ill. App. 3d 10, 16-17 (1975).) Whether the property is zoned in conformity with the uses and zoning of nearby property is a factor of paramount importance. (See, *e.g., Du Page Trust Co. v. County of Du Page,* 31 Ill. App. 3d 993, 999 (1975).) Zoning standards are comparative and must be applied to the facts of the individual case, always presuming the validity of the legislative enactment and giving it effect if there is room for a difference of opinion regarding the reasonableness of a classification. *(La Salle National Bank v. City of Evanston,* 57 Ill. 2d 415, 428 (1974).) A municipality may reasonably restrict increases in the population density as necessary for its health, safety and welfare and may even consider esthetic factors in proper instances. *(La Salle National Bank v. City of Evanston,* 57 Ill. 2d 415, 430 (1974).) In cases involving applications for planned unit developments designated as the special use in a residential zone the burden is on the plaintiff to prove by clear and convincing evidence that the denial of the special use permit is arbitrary, capricious and unreasonable in that it bears no real or substantial relationship to the public health, safety, morals or general welfare. *(Duggan v. County of Cook,* 60 Ill. 2d 107, 111 (1975); *La Salle National Bank v. County of Lake,* 27 Ill. App. 3d 10, 17 (1975); *Kraegel v. Village of Wood Dale,* 10 Ill. App. 3d 486, 491 (1973).) Also, the problems of school districts in growing areas may be considered in weighing public against private benefit but are by no means conclusive factors. See *Duggan v. County of Cook,* 60 Ill. 2d 107, 114 (1975).

Plaintiffs argue that the trial judge, as evidenced by his memorandum opinion, considered only the protestations of the Village of Mundelein that the proposed development would place an undue burden on public services such as pollution and fire protection, and, improperly injected his opinion that the proposal should not be approved until other proposed developments were coordinated. They argue that the court did not give proper weight to the totality of the zoning standards which the proposal satisfactorily achieved. The defendants respond that the court ruled correctly in that plaintiffs failed to sustain their burden of proving that the denial of the special use permit for a Planned Unit Development bears no substantial relation to the public health, safety, morals or general welfare.

■■ We conclude that judgment of the trial court was in error based upon the application of the relevant zoning standards to the evidence in the record. The evidence is sufficient to satisfy plaintiffs' burden of proving that the denial of the special use permit bore no real and substantial relation to the public health, safety, morals or general welfare.

Plaintiffs have clearly demonstrated that the proposed use is compatible with surrounding property uses in zoning existing and proposed. The hardship in the form of economic loss of the plaintiffs if they are prevented from using the property as proposed is not questioned; and the diminishing effect, if any, on surrounding land values is at best minimal. The property is clearly suitable for the proposed purpose. The record does not show that the destruction of the plaintiffs' property values is required in the promotion of the health, welfare and safety of the community. (See, *e.g.*, *La Salle National Bank v. County of Cook*, 12 Ill. 2d 40, 46-47 (1957); *Duggan v. County of Cook*, 60 Ill. 2d 107, 112 (1975).) In the consideration of the public interest it appears that the proposed use is compatible with the overall zoning plan for orderly land development. The plaintiffs followed approved procedures to insure such compliance (see *La Salle National Bank v. County of Lake*, 27 Ill. App. 3d 10, 16 (1975) which resulted in approval of the outline plan of development with stated conditions with which plaintiffs agreed to comply. See *Glassey v. County of Tazewell*, 11 Ill. App. 3d 1087, 1091 (1973).

■■ The fact that plaintiffs received a 15-7 majority vote of the Lake County Board of Supervisors and were only denied relief by the legislative body because of the three-fourths requirement imposed upon them by the filing of objections by the Village of Mundelein (see Ill. Rev. Stat. 1973, ch. 34, par. 3458) does not avoid the rule that there is a presumption of validity which attaches to the action of the legislative body. However, the presumption is not the decisive issue when, as here, a resolution of the basic issues shows that the legislative action is an invalid exercise of power. See *Smeja v. County of Boone*, 34 Ill. App. 3d 628, 633 (1975); *cf. Forestview Homeowners Association v. County of Cook*, 18 Ill. App. 3d 230, 241-42 (1974).

Plaintiffs have also argued that the Village of Mundelein should not have been permitted to intervene because it is without standing to litigate with respect to county zoning (citing *County of Cook v. Priester*, 22 Ill. App. 3d 964, 970 (1974), *aff'd*, 62 Ill. 2d 357 (1976); and have also argued that the trial court erred in permitting the County to withdraw an answer to interrogatories in which it admitted, by failing to answer, that the development "would not be detrimental to the public health or public safety." In view of our conclusion that the trial court erred in denying the special use permit sought by the plaintiffs we do not reach these issues.

The judgment of the circuit court of Lake County is reversed and this cause is remanded for the entry of an appropriate order not inconsistent with this opinion.

Reversed and remanded with directions.

GUILD, P. J., and HALLETT, J., concur.