Violation of City Ordinance 16-18 as amended (obscenity); sentence: $500 fine and 180 days hard labor.
On February 27, 1978, Officer John R. Walkinshaw of the Birmingham Police Vice Squad entered the Pleasure Books East store and purchased from the appellant a copy of the magazine, "My Black Lover." After personally reviewing the magazine, he presented it to City Magistrate J.M. Burns. After having examined the magazine for fifteen to twenty minutes, Mr. Burns issued a warrant for the appellant's arrest.
The magazine in question depicts explicit homosexual acts between men. There is no question that it is obscene under any standard known to law. In fact the appellant in brief and in oral argument on appeal concedes that the magazine is obscene; therefore, this appeal is based on other issues.
 I
Appellant contends that City of Birmingham Ordinance 16-18 as amended was systematically and selectively enforced against him resulting in purposeful and intentional discrimination violative of the equal protection clause of the Fourteenth Amendment.
Appellant raised his contention below by a pretrial motion to quash. On the hearing on that motion, Officer Walkinshaw testified that at the time of the arrest the vice squad consisted of three officers and one supervisor. He indicated that approximately one-fourth of his time was spent handling obscenity related matters. He was instructed as to what is and is not obscene; however, he was not ordered to arrest certain individuals. Rather, he was ordered to enter various book stores, make purchases, and deliver the information gathered to the city magistrate's office for a determination of probable cause.
Officer Walkinshaw testified as to his knowledge concerning the number of adult book stores and theaters in Birmingham and the surrounding area. He also testified that numerous drug and convenience stores sold magazines (Playboy, Oui, etc.) containing sexually related matter similar to that portrayed in magazines sold at the adult book stores. Officer Walkinshaw stated that some theaters open to the general public displayed movies (X-rated) depicting explicit sexual conduct and that, as part of his duties, he had viewed some of those movies but had made no arrests. He testified that to his knowledge no arrests were made merely because a movie contained nudity. The officer testified that in the year preceding the date of this incident, he had made four or five arrests at various book stores for their sale of obscene matter. After receipt of this testimony, the trial court overruled the appellant's motion.
Although no clear standards exist for the quantum or type of proof sufficient to illustrate discriminatory enforcement of a statute or municipal ordinance, three elements must generally be proved: (1) selectivity in enforcement, (2) selectivity that is intentional, and (3) selectivity based on *Page 1133 
some invidious or unjustifiable standard such as race, religion, or other arbitrary classification. Annot., 4 A.L.R.3d 404, 410 (1965); 13 Proof of Facts 2d § 5 (1977), and authorities cited therein. It is insufficient merely to show that other violators have not been prosecuted, that there has been a laxity in enforcement, or that there has been a conscious exercise of some selectivity in enforcement. See generally: Oyler v. Boles, 368 U.S. 448, 82 S.Ct. 501,7 L.Ed.2d 446 (1962); Snowden v. Hughes, 321 U.S. 1,64 S.Ct. 397, 88 L.Ed. 497 (1944); Yick Wo v. Hopkins, 118 U.S. 356,6 S.Ct. 1064, 30 L.Ed. 220 (1886); Butler v. State, Ala.Cr.App.,344 So.2d 203, 207 (1977); Johnson v. State, Ala.Cr.App.,335 So.2d 663, cert. denied, Ala., 335 So.2d 678 (1976).
A review of the evidence reveals that although enforcement of the Birmingham ordinance may not have been universal there is no evidence to indicate an intentional selectivity based upon an unjustifiable standard. The evidence does not indicate that the City focused its prosecutorial sights exclusively upon the appellant. It is apparent that appellant has not met his burden of proof in this regard. Consequently, his contention is without merit. See also: Robinson v. State, Ala.Cr.App.,353 So.2d 528, cert. denied, Ala., 353 So.2d 534 (1977).
 II
Appellant contends that the cumulative effect of the following statement and questions of the trial court denied him the right to a fair and impartial trial.
 A
During the voir dire examination of the venire, the trial judge, in response to a venireman's doubt that he could not view the evidence fairly and impartially, instructed the venire that many cases contain revolting evidence which may result in a jury having unpleasant jobs, duties, and responsibilities. Furthermore, he stated that each juror would be applying contemporary community standards when viewing the magazine and that each one would not be asked to apply his or her personal opinion to it. The appellant did not object to this instruction.
We find that the trial judge did not commit error in instructing the venire as to the possible unpleasantness of their job. It is within his province to apprise the venire of such. Furthermore, without a timely, specific objection, nothing is presented for our review. Scruggs v. State, Ala.Cr.App., 359 So.2d 836, cert. denied, Ala., 359 So.2d 843
(1978); 6B Alabama Digest, Criminal Law, 1045. Consequently, appellant's contention is without merit.
 B
Next, appellant asserts that the trial judge's question to Officer Walkinshaw, "Have you ever seen this book in any other book store," suggested its obscenity. Appellant did not object to the trial court's question. We do not find the above question to be suggestive that the magazine was obscene and neither do we find that the appellant has properly raised this issue for review. Scruggs, supra. See also: Van Antwerp v.State, Ala.Cr.App., 358 So.2d 782, cert. denied, Ala.,358 So.2d 791 (1978); Slinker v. State, Ala.Cr.App., 344 So.2d 1264
(1977); Robinson v. State, Ala.Cr.App., 342 So.2d 1331 (1977).
 C
Lastly, appellant contends that another question by the trial judge wherein he asked the appellant, "In other words, that thing came unwrapped," illustrated his contempt for the publication, revealed his prejudice toward him and, consequently, prejudiced the jury. Again appellant did not interpose a timely objection. Therefore, nothing is presented for our review. Scruggs; Van Antwerp; Slinker; and Robinson, supra. Additionally, we cannot *Page 1134 
imply the appellant's conclusions to the language of the question. We do not know what word or words in the question the trial judge may have emphasized. From reviewing the record (the only thing we may legally consider) the implication that could have been inferred from the trial judge's question is all too unclear.
 D
Having found that the trial judge's statement to the venire and questions propounded to various witnesses do not constitute error, it is also apparent that, collectively, they did not prejudice the jury. In light of the appellant's failure to preserve any error for review as well as considering the above discussed remarks and questions under Rule 45, ARAP, we do not find that the appellant was prejudiced by those remarks.
 III
Appellant contends that the trial court committed reversible error in denying his motion for a mistrial based upon a question propounded by the prosecuting attorney.
During redirect examination of Officer Walkinshaw, the prosecuting attorney asked the following questions:
 "Q. I'll ask you prior to February 27th, 1978, how many arrests had been made in the City of Birmingham for obscene magazines?
"MR. RITCHEY: Your Honor, I object.
"THE COURT: Overruled.
"A. Approximately 21.
 "Q. Do you know how many convictions resulted from these arrests?"
Since the appellant raised the issue of selective enforcement, the first question above was certainly material and relevant to that issue. No answer was given to the second question. The appellant immediately objected and moved for a mistrial. The trial court sustained appellant's objection to the second question and, after instructing the jury to disregard the question, overruled his motion for a mistrial.
Where the trial court acts promptly to impress upon the jury that improper statements should not be considered by them in their deliberations, the prejudicial effect of such remarks is removed. Gavin v. State, 52 Ala. App. 469, 294 So.2d 169, cert. denied, 292 Ala. 722, 294 So.2d 170 (1974), and cases cited therein. The trial judge, in realizing the potentially damaging consequences of the prosecuting attorney's second question, acted swiftly and professionally in instructing the jury to disregard it. We find that the trial judge's actions were not an abuse of discretion and that any error that might have arisen by the prosecutor's question was thereby cured. Watts v.State, 53 Ala. App. 518, 301 So.2d 280 (1974), and cases cited therein. See also: Borden v. State, Ala.Cr.App., 337 So.2d 1388
(1976).
Furthermore, we cannot determine whether or not the motion was directed toward the first or second question. We need not speculate as to this for the trial judge's immediate action eradicated any error that might have arisen. Likewise, a question unanswered serves as no basis for reversal. VanAntwerp, supra.
AFFIRMED.
All the Judges concur.