The appellant, John J. Chorzempa, Jr., was convicted of violating the zoning laws of the City of Huntsville by unlawfully storing "junk" in his yard and illegally parking a "one-ton" van in a residential area, violations of Huntsville City Ordinances 90-202 and 73-14. For the two violations, he was sentenced to respective terms of 30 days in jail with a $100 fine and 10 days in jail with a $50 fine. The appellant appeals these convictions and has filed a pro se brief.
 I
The appellant initially contends that the zoning ordinances dealing with the storage of "junk" was unlawfully enacted and is unconstitutional. He also contends that Ordinance 90-202 is arbitrarily enforced and encourages a "throw away" society.
Huntsville City Ordinance 90-202 reads in part:
 "Whereas, the City of Huntsville is empowered to enact ordinances to protect and to promote the general health and welfare; and
 "Whereas, the storage of damaged, worn out, scrapped, or discarded materials and objects, such as inoperable vehicles, building materials, machinery, metals, waste paper, rags, glassware, tinware, or other scrap and/or junk, as hereinafter defined, in the yards or other open spaces of lots used for residential and/or commercial purposes within the City of Huntsville could be injurious or harmful to the general public health, safety, and welfare by becoming overgrown with grass or weeds; and/or becoming littered with rubbish and debris; and/or becoming infested with rats, mice, insects, reptiles, and other vermin; and/or being unsightly; and
 "Whereas such conditions tend to attract children and endanger their lives and/or health, spread diseases, invite plundering, attract vagrants, create fire hazards and/or other safety and health hazards, create, extend, and aggravate urban blight, interfere with the enjoyment of and/or reduce the value of private property; and interfere with the comfort and well-being of the public. . . ."
The ordinance goes on further to define the term "junk":
 "['Junk'] [s]hall mean and include all metals, whether ferrous or non-ferrous, including, but not limited to, any used or secondhand parts of machinery; plumbing fixtures, or parts thereof; parts of an automobile, truck, bus, motorcycle, or other motor vehicle; gas or electrical appliances or fixtures, or parts thereof; household hardware; wire; cable; bearings; valves; pipes and pipe-fittings; building materials; *Page 1023 
wood; or any other used or secondhand metal articles, including motor vehicles."
The municipality's authority to enact ordinances is set forth in § 11-52-70, Code of Alabama 1975:
 "Each municipal corporation in the state of Alabama may divide the territory within its corporate limits into business, industrial and residential zones or districts and may provide the kind, character and use of structures and improvements that may be erected or made within the several zones or districts established and may, from time to time, rearrange or alter the boundaries of such zones or districts and may also adopt such ordinances as necessary to carry into effect and make effective the provisions of this article."
When a municipality enacts zoning ordinances, it acts in a legislative capacity, which "rests on the exercise of [its] police power." Haas v. City of Mobile, 289 Ala. 16,265 So.2d 564, 567 (1972). The only limitation placed on a municipality is that the ordinances must be comprehensive in scope and not in conflict with state laws or the state and federal constitutions. Jefferson County v. City of Birmingham, 256 Ala. 436, 55 So.2d 196 (1951).
As the Alabama Supreme Court stated in Allen v. Axford,285 Ala. 251, 231 So.2d 122, 127 (1969), "The right of a governing body to enact zoning ordinances is not unlimited, and the ordinance must bear some substantial relation to the public health, safety, morals, general welfare, and general convenience." When determining the validity of an ordinance, we must ask whether the ordinance "bears a substantial relationship ta the public health, safety, morals, and general welfare." Come v. Chancey, 289 Ala. 555, 269 So.2d 88, 97
(1972). Ordinance 90-202 "bears a substantial relationship to the public health."
As stated above, the appellant also contends that Ordinance 90-202 is arbitrarily enforced.
 " 'Municipal ordinances, placing restrictions upon lawful conduct, or the lawful use of property, must, in order to be valid, specify the rules and conditions to be observed in such conduct of business, and must admit of the exercise of the privilege by all citizens alike who will comply with such rules and conditions, and must not admit of the exercise, or of an opportunity for the exercise, of any arbitrary discrimination by the municipal authorities between citizens who will so comply.' "
Longshore v. City of Montgomery, 22 Ala. App. 620, 119 So. 599,600 (1928), cert. denied, 218 Ala. 597, 119 So. 601 (1928), quoting City Council of Montgomery v. West, 149 Ala. 311,42 So. 1000, 1000-01 (1907).
 "To show discriminatory enforcement of a municipal ordinance, the appellant must prove the following three elements: (1) Selectivity in enforcement, (2) intentional selectivity, and (3) selectivity based on an unjustifiable standard. Starley v. City of Birmingham, Ala. Cr. App. 377 So.2d 1131. In Starley, this court stated:
 " 'It is insufficient merely to show that other violators have not been prosecuted, that there has been a laxity in enforcement or that there has been a conscious exercise of some selectivity in enforcement.' "
Coble v. City of Birmingham, 389 So.2d 527, 533
(Ala.Cr.App. 1980), writ denied, 389 So.2d 535 (1980). The appellant has failed to show any selectivity in enforcement.
The appellant also argues that Ordinance 90-202 is vague. "[V]alidity of an ordinance as to vagueness is measured by whether it gives a person of ordinary intelligence fair notice that his contemplated conduct is forbidden thereunder."City of Coral Gables v. Wood, 305 So.2d 261 (Fla.App. 1974). Here, the ordinance specifically detailed the offense of storing "junk" and defined the term "junk." The ordinance was not vague. "While some degree of ambiguity inheres in any statute by virtue of limitations attributable to the written word, we fail to comprehend any inspecificity in the ordinance with regard to language which, when read in its entirety, "forbids" the storage of "junk" in a residential yard. JaffeCorp. v. Board of Adjustment of City of Sheffield,361 So.2d 556, 561 (Ala.Civ.App. 1977), writ quashed, 361 So.2d 563
(Ala. 1978). *Page 1024 
Neither is Ordinance 73-14 constitutionally invalid. This ordinance states:
 "No truck parking shall be permitted in any residence district greater than a three-quarter ton pick-up truck except a truck or commercial vehicle not greater than one and one-half tons may be parked in an accessory structure within a residence district."
"[C]urrent authorities recognize neighborhood aesthetics to be integrally bound to property values and to be relevant considerations in zoning when they bear in a substantial way upon land utilization." City of Gables v. Wood, 305 So.2d at 263, citing Livingston Township v. Marchev, 85 N.J. Super. 428,205 A.2d 65, 67 (1964), cert. denied, 44 N.J. 412, 209 A.2d 145
(1965), appeal dismissed, 382 U.S. 201, 86 S.Ct. 393,15 L.Ed.2d 269 (1965). "Aesthetic considerations have been held to be a valid basis for zoning in Florida." Wood, 305 So.2d at 263. They have also been held valid in Wisconsin, State ex rel.Saveland Park Holding Corp. v. Wieland, 269 Wis. 262,69 N.W.2d 217, cert. denied, 350 U.S. 841, 76 S.Ct. 81, 100 L.Ed. 750
(1955); in Illinois, Continental Homes of Chicago, Inc., v.Lake County, 37 Ill. App.3d 727, 346 N.E.2d 226 (1976), and in Pennsylvania, Berk v. Wilkinsburg Zoning Hearing Board,48 Pa. Commw. 496, 410 A.2d 904 (1980). See also Smith, Validityof Zoning Ordinances Prohibiting or Regulating Outside Storageof House Trailers, Motor Homes, Campers, Vans, and the Like, inResidential Neighborhoods, 95 A.L.R.3d 378 (1979).
We hold as the Superior Court of New Jersey held inLivingston: "It is apparent that the statutory grant of police powers to municipalities encompasses the authority to enact regulatory ordinances for the protection and preservation of property values affecting the general welfare of the community." 205 A.2d at 67. See 101A C.J.S., Zoning and LandPlanning (1979).
Further, the appellant was not deprived of his right to own a "one ton van." "[H]e was only restricted from indulging in a use that would impinge upon the rights of other property owners." Wood, 305 So.2d at 264.
 II
The appellant further argues that he was not given notice of his violating the Huntsville City ordinances. However, this allegation is not supported by the record. The record shows, and indeed, the appellant himself admits in his brief, that he refused to be served with the notice because he refused to pick up his certified mail. Further, Audie Majors, of the Huntsville Community Development Department, testified that he hand delivered a citation to the appellant.
The appellant also raises numerous other allegations in his brief; some, he says, concern a conspiracy that was perpetrated against him by the City of Huntsville. We have reviewed the other allegations and determine them adversely to the appellant.
The record shows that the trial judge, Hon. William D. Page, and the city attorney, Hon. Gregory N. Hopkins, went to great lengths to ensure that the appellant's due process rights were respected. This is in part evidenced by the three-volume transcript. The appellant had his "day in court."
For the foregoing reasons the judgment in this cause is due to be affirmed.
AFFIRMED.
All the Judges concur.