Bernice Nesby, the appellant, was convicted of violating Montgomery City Ordinance 37-91, on a complaint charging that she failed to remove junk vehicles from her real property. She was fined $30 and was ordered to pay $54 in court costs. The appellant raises three issues on this appeal from that conviction.
 I
In Nesby v. City of Montgomery, 639 So.2d 591
(Ala.Cr.App. 1993) (table), this Court, in an unpublished memorandum, affirmed the appellant's earlier conviction for this same offense. The substance of that memorandum was as follows:
 "AFFIRMED BY MEMORANDUM. Bernice Nesby, the appellant, was convicted for a violation of Montgomery City Ordinance 37-91, in failing to remove junk vehicles from her real property. She was fined $30 and [was] ordered to pay $54 in court costs. The appellant raises three issues on this appeal from that conviction.
I.
 "The appellant asserts that the evidence is insufficient to support the conviction. The appellant alleges that she had a license to buy and sell, restore antique vehicles, and that she fell within an exception provided in the ordinance. There was no objection of any type challenging the sufficiency of the evidence and this issue was not preserved for review. Ex parte Maxwell, 439 So.2d 715, 717 (Ala. 1983).
II.
 "The appellant asserts that the municipal ordinance under which she was convicted is void for vagueness. This court 'will not consider on appeal any constitutional questions not raised below.' Steele v. State, 289 Ala. 186, 189, 266 So.2d 746 (1972).
III.
 "The appellant asserts that the penalty imposed for violating municipal ordinance 37-91 violates the constitutional prohibition against double jeopardy. The appellant requests 'this court to take judicial notice that appellant was found guilty of a subsequent separate offense and said conviction is on appeal to the Circuit Court of *Page 786 
Montgomery, Alabama awaiting disposition.' Appellant's brief at 12. This issue was not preserved for review by objection. Cox v. State, 462 So.2d 1047 (Ala.Cr.App. 1985). This Court cannot take judicial notice of 'other proceedings.' An appellate court generally cannot consider matters outside of the record. Scroggins v. Alabama Gas Corp., 275 Ala. 650, 158 So.2d 90 (Ala. 1963); Lyle v. Eddy, 481 So.2d 395 (Ala.Civ.App. 1985)."
These same issues are presented on this appeal from a later conviction. In addition, the parties stipulated that "the testimony and evidence adduced at the trial in cases styled,City of Montgomery v. Bernice Nesby, and further identified by Case Nos. CC-93-5065/5066, are adopted and incorporated in the above-styled cause as if the testimony and evidence were fully set forth herein." C.R. 13. The appellant was convicted in case number CC-5066 and that conviction was the subject of the memorandum in Nesby v. City of Montgomery, quoted above. The City of Montgomery nol-prossed case number CC-5065.
The parties further stipulated to facts that demonstrate to this Court that defense counsel preserved these issues by proper and timely objection before the trial court. C.R. 14.
 II
The appellant claims that the evidence was not sufficient to support her conviction.
Montgomery City Ordinance 37-91 provides, in pertinent part:
"ARTICLE I — TITLES AND DEFINITIONS
"SECTION 1. TITLE
 "This ordinance shall be known and may be cited as the 'Litter, Weed and Mud Control Ordinance of the City of Montgomery.'
"SECTION 2. DEFINITIONS
". . . .
 "j. Junk. Any vehicle or vehicle parts, rubber tires, appliances, dilapidated furniture, machinery, equipment, building material or other items which are either in a wholly or partially rusted, wrecked, junked, dismantled, or inoperative condition.
 "k. Junked or other vehicle. One that does not bear a current registration license plate and is unable to move under its own power.
". . . .
"ARTICLE IV — STATIONARY VIOLATIONS
". . . .
 "SECTION 5. INDISCRIMINATE DUMPING OR DISCHARGING OF LITTER, TRASH, JUNK, SOLID WASTE, AND MUD
 "a. It shall be unlawful for any person to discard or dump along any street, street median, or road, on or off the right-of-way, any household or commercial solid waste or trash or junk on any private or public property unless disposed of in receptacles provided for public use for the deposit of said material, or in an area designated by the Alabama Department of Environmental Management as a permitted disposal site. Mud at construction activities shall be cleaned without delay from public property. Any person charged with a violation of this section shall be required to appear in municipal court to answer said charge or charges and, upon conviction, shall be fined a minimum of One Hundred Dollars ($100.00) and shall be subject to any other penalties provided in this section.
 "b. Cleaning Litter, Weeds, High Grass, or Junk from Open Private Property: The Inspection Department is hereby authorized and empowered to notify the owner of any open or vacant private property within the City, or the agent of such owner, to properly dispose of litter o[r] trash or junk, or mow or cut weeds or grass in excess of twelve (12) inches in height located on such owner's property. The failure, neglect, or refusal of any owner so notified to properly dispose of litter or trash or junk or mow or cut weeds or grass in excess of twelve (12) inches in height within fifteen (15) days after being notified of the adverse condition as provided for in this section shall constitute a *Page 787 
violation of this ordinance. In addition, the City of Montgomery is specifically authorized to institute an action in the Municipal Court of the City of Montgomery, Alabama, to abate any public nuisance created by litter, trash, junk, weeds or high grass located on any open or vacant property within the City of Montgomery and the costs of said proceeding and the removal of said litter or trash or junk or abatement of weeds or high grass shall be assessed against the owners of such property.
"Exceptions:
 "1. This shall not apply to licensed junk dealers or establishments engaged in the repair, rebuilding, reconditioning, or salvaging of equipment, provided that the work area is screened from public view by a fence, hedge, wall or similar device of sufficient height to provide a visual buffer, and is in compliance with the City's Junk and Zoning Ordinance."
The appellant contends the evidence was insufficient to support her conviction because, she says, she was a licensed junk dealer and there was no evidence that "the work area [was not] screened from public view by a fence, hedge, wall or similar device of sufficient height to provide a visual buffer." The City proved that the appellant had at least three junk vehicles on her property and that she did not have a license to operate a junkyard or an "automobile graveyard." Although there was evidence that the appellant's husband had a license to restore vehicles and to sell automobile parts, there was also evidence that he had "quitclaimed" the property to the appellant on May 28, 1987. Although there was no direct and specific testimony that the area was not "screened from public view by a . . . visual buffer," photographs admitted into evidence reveal only a chain link fence around the yard in which the vehicles were located. Furthermore, the testimony of the housing inspector allowed the inference that the area was not properly screened:
 "This is an exception that's sometimes used in the event of a licensed junk dealer, in which case the property can be used, all other conditions being met, as a junkyard. But there are certain things that have to be done in order to meet the code for junkyards, such as privacy screening around the property so it is not visible to any residential people or the public traffic. Also I think there is a different license — I think there is a different license you have to get to store junk vehicles. Anything over three vehicles the City considers an automobile graveyard or junkyard, so to speak." R. 6-7.
"In determining the sufficiency of the evidence to sustain the conviction, this Court must accept as true the evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider the evidence in the light most favorable to the prosecution." Faircloth v. State,471 So.2d 485, 489 (Ala.Cr.App. 1984), affirmed, 471 So.2d 493
(Ala. 1985). When viewed in the light most favorable to the prosecution, the evidence is at least minimally sufficient to sustain the appellant's conviction.
 III
The appellant contends that the ordinance is unconstitutionally vague because she says, it does not adequately warn of the prohibited conduct. Specifically, she asserts that the ordinance "fails to disclose that failure of a licensed establishment to screen the work area from public view constitutes a violation of the ordinance." Appellant's brief at 12. We disagree.
In Chorzempa v. City of Huntsville, 643 So.2d 1021
(Ala.Cr.App. 1993), the defendant was convicted of violating Huntsville City Ordinances 90-202 and 73-14 by unlawfully storing "junk" in his yard and illegally parking a "one-ton" van in a residential area. In response to the defendant's argument that Ordinance 90-202 was unconstitutionally vague, this Court held:
 " '[V]alidity of an ordinance as to vagueness is measured by whether it gives a person of ordinary intelligence fair notice that his contemplated conduct is forbidden thereunder.' City of Coral Gables v. Wood, 305 So.2d 261 (Fla.App. 1974). Here, the ordinance specifically detailed the offense of storing 'junk' and defined the term 'junk.' The ordinance was not *Page 788 
vague. "While some degree of ambiguity inheres in any statute by virtue of limitations attributable to the written word, we fail to comprehend any inspecificity in the ordinance with regard to language which, when read in its entirety, 'forbids' the storage of 'junk' in a residential yard. Jaffe Corp. v. Board of Adjustment of City of Sheffield, 361 So.2d 556, 561 (Ala.Civ.App. 1977), writ quashed, 361 So.2d 563 (Ala. 1978)."
We conclude that Montgomery City Ordinance 37-91 affords a person of ordinary intelligence fair notice of what conduct is forbidden.
 IV
The appellant claims that her second prosecution was barred by principles of former jeopardy. The appellant was convicted on April 13, 1993, of a violation that occurred on December 21, 1992. That conviction was affirmed by unpublished memorandum inNesby v. City of Montgomery. On April 14, 1993, the appellant was charged for a second violation of ordinance 37-91 based on the allegation that the same junk vehicles were still parked in her yard. She was convicted of that violation on July 21, 1993. C.R. 10. That conviction is the subject of this appeal.
The appellant contends that she has been prosecuted twice for the same offense.
Section 4 of Article II of Ordinance 37-91 provides:
 "Any person found guilty of violating any provision of this ordinance who has been found guilty under Article II, Section 1(b), of this ordinance in that calendar year may be punished by a fine not more than five hundred dollars ($500.00) and/or by imprisonment in the City Jail at hard labor for a period not to exceed six (6) months, at the discretion of the judge trying the case. A person found to be in violation of this ordinance shall be notified by mailgram or certified mail or personal delivery and shall have fifteen (15) days from the date of notice in which to remedy the violation. Each day such violation is committed or permitted to continue after the expiration of the above mentioned fifteen (15) day period shall constitute a separate offense and shall be punishable as such thereunder. . . ." (Some original emphasis omitted; other emphasis added.)
The principles governing this issue were addressed inState v. Barlow's, Inc., 111 Idaho 958, 729 P.2d 433
(App. 1986).
 "Our reading of the city's ordinance suggests that failure to obtain a permit is a single-event offense. The ordinance provides that 'to install' electric improvements 'unless and until a permit for such work has been secured' is a misdemeanor. Failure to secure a permit following complete installation is not addressed. Because failure to obtain a permit is a single-event offense, and because this charge previously had been dismissed, the city was barred by I.C. § 19-3506[, which provides that 'An order for the dismissal of the action . . . is a bar to any other prosecution for the same offense, if it is a misdemeanor,'] from renewing the charge with respect to the same installation. Therefore, we affirm the district court's ruling [that further prosecution was barred] with respect to this offense.
 "However, we find the offense of failing to correct or remove a non-code installation to be a continuing offense. The city's ordinance requires that:
 "All installations in the city, of wires and equipment to convey electric current and installations of apparatus to be operated by such current, except as provided in this chapter, shall be in conformity with the National Electrical Code. . . .
 "We interpret this section as requiring that the improvement conform to the Code standards. So long as the nonconforming improvement remains in place, a continuing offense is in progress.
 "Ordinarily a continuing offense would constitute a single offense for purposes of our [jeopardy] statute. A prosecution for a continuing offense is a bar to subsequent prosecution for the same offense charged to have been committed at any time prior to the initiation of the first prosecution. State v. Williams, 184 A.2d 618 (Del. Super. Ct. 1962); Ostendorf v. State, 8 Okla. Cr. 360, 128 P. 143 (1912). However, it is not *Page 789 
a bar to prosecution for offenses thereafter, as these are new violations of the law. People v. Johansen, 66 Cal.App. 343, 226 P. 634 (1924) (regarding conspiracy prosecution); Savage v. District of Columbia, 54 A.2d 562 (D.C. 1947). . . . See generally 22 C.J.S. Criminal Law § 281 (1961). A contrary rule would, in effect, grant a license to continue the offense. . . .
 "We are referred to State v. Barter, [80 Idaho 552, 335 P.2d 887 (1959)], where our Supreme Court found two complaints charging reckless driving north and south of the village of Carey and only south of Carey, respectively, to allege identical offenses. The case at bar is easily distinguished. Here, citations were issued for acts or omissions on separate occasions. Significantly, the ordinance specifies that each day's continuing violation is a separate offense. Where a violation constitutes a continuing offense, the legislature may define each day during which it continues as constituting a separate offense. Bell v. United States, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955); State v. Williams, 211 Neb. 650, 319 N.W.2d 748 (1982); Ostendorf v. State, supra. The question is primarily one of legislative intent and authority. See Garrett v. United States, 471 U.S. 773, 105 S.Ct. 2407, 85 L.Ed.2d 764 (1985) (construing the federal continuing criminal enterprise statute to permit prosecution following conviction for a predicate offense). Compare Eureka Springs v. O'Neal, 56 Ark. 350, 19 S.W. 969 (1892).
 "The City of Pocatello has clearly and unambiguously ordained that each day's violation of this ordinance is a separate offense. The city has appropriate and reasonable interests in doing so. The city has adopted minimum standards for electrical improvements. Each day that a possibly faulty electrical installation remains in place it presents a hazard to property and to the public in general. Compounding daily fines provide an incentive to the contractor or property owner to remove or correct the electrical installation as soon as possible.
 "Barlow's was not prosecuted for the same act. Rather, the last prosecution was for omitting to correct the former act. Therefore, additional evidence showing the continued presence of the installation would also be required. Although prosecution for an omission on January 19 may have required proof of a non-code installation by the contractor on an earlier date, we hold that each is a separate offense under this ordinance and that under I.C. § 19-3506 the former dismissals did not bar the latter action. Compare Dapper v. Municipal Court, San Diego Judicial District, 276 Cal.App.2d 816, 81 Cal.Rptr. 340 (1969), cert. denied, 399 U.S. 910, 90 S.Ct. 2200, 26 L.Ed.2d 562
(1970) (permitting repeated prosecutions until a nuisance is abated); Abramowitz v. Byrne, 185 Misc. 346, 57 N.Y.S.2d 45 (1945) (permitting successive prosecutions for housing-code violations). A contrary interpretation would yield a rule that one dismissal provides immunity to the offender to leave a possibly hazardous improvement in place. Cf. Wilson v. Cooper, 249 Ky. 132, 60 S.W.2d 359 (1933) (payment of a fine does not permit continued obstruction of a 'passageway,' with a fence)."
State v. Barlow's, Inc., 729 P.2d at 436-37.
In City of Trussville v. Porter, 279 Ala. 467, 187 So.2d 224
(1966), the relevant municipal ordinance prohibited the operation of a stone quarry without a proper license. That ordinance provided that "[e]ach day such violation continues shall constitute a separate violation." 279 Ala. at 470,187 So.2d at 227. In holding that the circuit court erred in enjoining the city from enforcing the ordinance and arresting the workers at the quarry, the Supreme Court noted:
 "Where distinct offenses are validly created arrests may be made for each infraction, and equity cannot be invoked to restrain exertion of municipal power to enforce its penal laws on the ground that another distinct offense (as measured by a day's dereliction) has been punished though identical in nature. The offender cannot predicate immunity on his own wrong conduct. Barrett v. Rietta, 207 Ala. 651, 93 So. 636."
Porter, 279 Ala. at 470, 187 So.2d at 227.
In Barrett v. Rietta, 207 Ala. 651, 93 So. 636 (1922), food merchants sought to restrain *Page 790 
the city from enforcing certain municipal ordinances regulating the places of sale of articles of food. The court noted:
 "[T]he amended bill is without equity in the aspect that it seeks restraint of the municipal authorities to effect repeated arrests for daily failures to observe the ordinances involved. Section 699 of the City Code provides that when the prohibited act or omission of enjoined duty is 'of a continuous character,' the penalties prescribed shall 'apply to each and every day's continuance thereof,' thus constituting a 'day's' infraction a distinct offense in such cases. Section 700 invests the court with power to elect under which one of the two or more applicable ordinances the prosecution shall proceed. Notice of the ordinances, etc., of Birmingham is taken by the courts. Gen. Acts 1915, p. 297, § 7. That this municipality had and has authority to define offenses within the municipal power and to impose penalties therefor is clear. Ala. Code 1907, § 1251; Weakley's Laws of Jefferson County, pp. 158, 159, 160 (Charter approved February 23, 1899).
 "Given the valid exercise of the authority to define offenses of the present nature, and to penalize infractions thereof, the ascription of a completed, distinct offense to each day's failure to observe the municipal mandate is, manifestly, a valid exercise of the power conferred. The theory upon which the court below appears to have overruled the demurrers, stated before, cannot be supported. Of course, where distinct offenses are validly created and defined arrests may be made for each infraction; and equity's processes cannot be invoked to restrain municipal exertion of its power to enforce valid penal laws on the ground that for another, distinct (as measured by a day's dereliction) offense, though identical in nature, the offender has been previously arrested, tried, and convicted. No such immunity of an offender can be predicated of the offender's own wrong."
Rietta, 207 Ala. at 653, 93 So. at 637. Compare Sherman v.State, 38 Ala. App. 106, 110, 77 So.2d 495, 498 (1954), cert.denied, 262 Ala. 704, 77 So.2d 499 (1955) ("The offense of possessing a still at the same location and by the same parties is continuing in evidential character. However, only one conviction may be had for the possession."); Statham v. State,25 Ala. App. 135, 141 So. 915, 916 (1932) (Defendant indicted on February 8, 1929, for possession of still and subsequently convicted. Defendant then indicted on August 21, 1929, for possession of same still during the month of March 1929. "If the still, etc., the possession of which was the basis of each of the two indictments above referred to, was, indeed, one and the same still, etc., in each case, appellant, having been formerly convicted upon a trial under the indictment returned February 8, 1929, could not, of course, be properly convicted upon this trial.").
In Chorzempa, 643 So.2d at 1024, this Court held that " '[i]t is apparent that the statutory grant of police powers to municipalities encompasses the authority to enact regulatory ordinances for the protection and preservation of property values affecting the general welfare of the community.' "
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.