Petitioner Mitchell Rutledge was convicted and sentenced to death for robbery when the victim is intentionally killed. The facts are set out in the opinion of the Court of Criminal Appeals reported at 482 So.2d 1250 (Ala.Crim.App. 1983). We issued the writ of certiorari pursuant to Rule 39 (c), ARAP.
After carefully reviewing the record and briefs of the respective parties, we affirm as to each of the respective parts of the appellate court's opinion except for part IV, relating to the sentencing phase of the trial. Therefore, we affirm as to the conviction and reverse the sentence and remand for a new sentencing hearing.
The Court of Criminal Appeals summarizes defendant's basis for "his motion for mistrial, made during the sentencing phase closing argument of the State, [because] the prosecutor suggested that a sentence of life imprisonment without parole might not prevent appellant from, at some time, being released from prison."
In our review of this alleged error, it is essential that we place in perspective the entire chronology of events leading up to defendant's motion for mistrial. Again, quoting from the appellate court's opinion: "During the initial phase of the State's closing argument," (at the sentencing phase of the bifurcated trial), the prosecutor "indicated that appellant had committed the instant offense while he was on parole. Consequently, he argued that appellant had been given an opportunity to change his life and could not be rehabilitated."
The appellate court's opinion then sets out portions of defense counsel's closing argument, which may be summarized as follows: If one of "the reasons that you should kill Mitchell Rutledge" is "[f]or the protection of society," then "the death sentence in this case will not protect society any more than your other choice, life without parole; because Mitchell will spend the rest of his natural life behind bars. There is no chance that he is going to commit such an offense again, even if you all think that he would if he were given a chance. Society will be protected and you don't need to return a sentence of death to fulfill your civic duty that way. That will be taken care of by the legislature, and that's why they provided the next most serious punishment to death, life without parole, as an alternative."
In its closing summation to the jury, the State replied: "And then you heard Mr. Balske telling you what they wanted for this defendant, is life without parole. Mr. Balske told you because with that sentence there is no chance of him ever doing anything like this again and him spending the rest of his life in prison, because that is what `life without parole' means, and there is no chance that he will get out. That's what Mr. Balske told you. Ladies and gentlemen of the jury, that remark scares me to death. I'm not sure that there is anything such as life without parole."
Upon denying the defendant's mistrial motion, the trial court commented that because defense counsel had argued that, "under a life without parole sentence, Defendant *Page 1264 
would be locked up forever, [the State] has the right to argue that he may not be locked up forever." The State then continued its closing jury argument:
 "Life without parole. Mr. Balske came up and told you that there is no chance that he [appellant] would ever get out again. I submit to you, ladies and gentlemen, that you can apply your own common sense to that statement. I submit to you that, as long as there are parole boards, as long as there are Federal courts in the State of Alabama, and as long as the legislature of the State of Alabama still exists, there is a chance that this defendant will get out, so do not be misled for a minute; and I don't think that you were when this man gets up and tells you that there is just no chance that he [appellant] will ever get out. You know better than that, and that's what scares me about life without parole or what it is supposed to be. Life without parole."
Finding the prosecuting attorney's argument proper as a "reply in kind to the previous comments of [defendant's] counsel," the Court of Criminal Appeals concluded that "Appellant cannot complain of the remarks when they were initiated, provoked, or occasioned by [the] action . . . of his counsel."
We disagree. Certainly, as observed by the appellate court, argument of counsel that, in fact, is a reply in kind to an earlier argument of opposing counsel would not be subject to objection, even though such argument otherwise would be impermissible. But this settled proposition presupposes that the reply argument, otherwise impermissible, is rendered unobjectionable because of opposing counsel's earlier impermissible argument.
The "reply in kind" doctrine is based on fundamental fairness. Where counsel for one party permits counsel for the opposing party to make impermissible remarks to the jury without interposing an objection, the law implicitly reserves to the former the right to reply in kind, albeit equally impermissible, to the argument of the latter. As is ofttimes the case, an objection to an illegal argument, although sustainable, is ineffective to eradicate the harm done. Counsel, as a matter of trial strategy, may elect in such cases not to interpose an objection, wait his turn, and reply in kind, thus commenting upon matters that otherwise he could not argue.
It is a misapplication of this rule, however, to uphold an illegal argument under the guise of "reply in kind," where the initial argument, to which the purported reply is addressed, is itself a legally permissible comment to the jury.
The resolution of two related questions, then, is dispositive: (1) Whether defense counsel's comment to the effect that life without parole means that defendant would remain in prison for the rest of his life, was a proper and legal argument; and (2) Whether the State's comment to the effect that so long as parole boards, federal courts, and the State Legislature exist, there is a chance that this defendant will get out, was a proper and legal argument. We answer the first question "Yes," and the second question "No."
We hold that the argument of defense counsel here in question was properly premised upon the law of the case. Indeed, if the jury, during deliberations, had inquired of the court what the term "without parole" meant, the court could, and should, have replied to such inquiry, in substance, by telling the jury essentially what was said to them by defense counsel. We find nothing improper in counsel's statement to the effect that life without parole meant life without parole; this is the legislative mandate as the only sentence other than the death penalty once the jury has found the defendant guilty of capital murder. The use of his argument in an effort to persuade the jury to recommend life without parole as opposed to the death sentence is entirely within the range of permissible argument.
On the other hand, the State's argument exceeds the permissible boundaries in that it is directly contrary to the law of the *Page 1265 
case. The jury's duty is to make its recommendation in accordance with the law as instructed by the trial court. That law, as charged to it by the court, was that it could recommend, upon consideration of all the aggravating and mitigating circumstances, either death or life without parole. For the District Attorney to contradict the court's statement of the law, under which the jury is instructed to discharge its sworn duty, is tantamount to the usurpation of the trial court's function and constitutes prejudice to the substantial rights of the defendant.
In conclusion, we comment upon the recent United States Supreme Court case of California v. Ramos, 463 U.S. 992,103 S.Ct. 3446, 77 L.Ed.2d 1171 (1983), upholding the constitutionality of a California statute requiring capitalmurder trial judges to instruct juries that they were permitted to consider the Governor's power to commute a life without parole sentence. In that case, the statute mandating such instruction became a part of the law of the case. Not only do we have no such statute, but it has long been the law of this State that comments upon the probability or possibility of what might happen under a particular sentence, falling outside the evidence and the law of the case, constitute improper argument.Eaton v. State, 278 Ala. 224, 177 So.2d 444 (1965); see alsoMurray v. State, 359 So.2d 1178 (Ala.Cr.App. 1978). As Judge Cates aptly stated in the opening sentence of his article "Closing Arguments in a Criminal Case," 33 Ala. Lawyer 87 (Jan. 1972), "The object of closing argument (sometimes called `summation') is to persuade the jury that a desired verdict upon the evidence is required by the law of the case which the judge will give to the jury."
For the failure of the trial court to grant appellant's motion for mistrial at the sentence hearing the Court of Criminal Appeals should have reversed the judgment of sentence and remanded for a new sentence hearing.
REVERSED AND REMANDED.
TORBERT, C.J., and FAULKNER, JONES, ALMON, SHORES, BEATTY and ADAMS, JJ., concur.
MADDOX, J., dissents.