The appellant, Herbert Dennis, was indicted for the unlawful distribution of a controlled substance, cocaine, in violation of § 13A-12-211, Code of Alabama 1975. A jury found Dennis "guilty as charged in the indictment," and he was sentenced to 12 years' imprisonment and was ordered to pay $25 to the Victims' Compensation Fund, and court costs.
Between October 1989 and February 1990, an undercover narcotics agent with the Dothan Police Department, Governor Jackson, was working on a drug operation in Barbour County with Robert Cummings, a confidential informant. On February 25, 1990, all the individuals charged with selling drugs during this drug operation were arrested, including this appellant.
On December 14, 1989, Agent Jackson and Cummings saw the appellant traveling north on U.S. Highway 431, driving a blue van. They pulled up beside the van at a stoplight and asked the appellant if he had anything for sale. Herbert Dennis directed them to a Zippy Mart convenience store on Highway 431 North.
Agent Jackson testified that when they arrived at the Zippy Mart the appellant made a telephone call and then returned to his van. Then Jackson and Cummings got into the van. The appellant stated that he only had some "twenty- to forty-cent pieces." The appellant pulled a match box from his shirt pocket and laid some aluminum foil in the front seat. Agent Jackson picked up the foil and found that it contained what he believed to be cocaine. Agent Jackson at the appellant's request then laid two $20 bills on the floor between the seats.
Taylor Noggle, with the Alabama Department of Forensic Sciences, tested the substance and found it to be .167 grams of cocaine base, commonly referred to as crack cocaine.
The appellant testified that he stopped at the Zippy Mart to buy a package of potato *Page 550 
chips and a soda. When he returned to his van, Cummings got in and laid something on the console and then got out. A few minutes later, Cummings returned with another man who poked money towards the appellant. The appellant stated that he did not sell crack cocaine.
 I
This appellant's first contention is that the trial court committed reversible error in refusing to declare Cummings a hostile witness. When appellant's counsel first informed the court that she wished to call Cummings and treat him as a hostile witness, the conversation between appellant's counsel and the trial judge was as follows:
 "MRS. HICKS: I'm wanting to get on the record that I want to call Robert Cummings and treat him as a hostile witness; that he was the confidential informant in this case.
 "THE COURT: You can call him, and if he shows to be hostile then you can ask the Court at that time to let you treat him as a hostile witness; but, if you put him on there you are not going to ask him about whether or not —
 "MRS. HICKS: (Interposing) I want to ask him about his drug habit.
 "THE COURT: We are not talking about his drug addiction. He is not on trial.
 "MR. LeMAISTRE [Prosecutor]: I know you want to put him on trial but the State just put on this case against Herbert Dennis.
 "THE COURT: If you want to use Robert Cummings, he is your witness. If he shows to be hostile on the witness stand then you can ask him and treat him as a hostile witness. I'll let you, but you can't put him on the stand and ask him something and try to impeach him.
 "This is my ruling. So you do what you think you need to do." (R. 88-89.)
Again at the conclusion of the appellant's counsel direct examination and the State's cross-examination, counsel requested that the witness be declared hostile. The record reads as follows:
 "MRS. HICKS: I asked to treat the witness as a hostile witness and to get into the drug habit. I think it is very important to this trial.
 "THE COURT: Mrs. Hicks, you called the witness to the stand. He has not been hostile. His testimony has been adverse to your client but that doesn't make him hostile. He has freely answered your questions. You called him, Mrs. Hicks." (R. 107.)
"The determination of whether a party is an 'unwilling or hostile witness,' as referred to in Rule 43(b), A.R.Civ.P., is a matter within the discretion of the trial court." Pope Quint, Inc. v. Davis, 485 So.2d 1134 at 1137 (Ala. 1986).
There must be some evidence before the trial judge which would allow him to determine that the witness is, in fact, hostile, before he can declare the witness hostile. Wiggins v.State, 398 So.2d 780 (Ala.Cr.App. 1981), writ denied, Ex parteWiggins, 398 So.2d 783 (Ala. 1981); Weaver v. State,466 So.2d 1037 (Ala.Cr.App. 1985).
This court, in Wiggins v. State, 398 So.2d 780
(Ala.Cr.App. 1981), held that a witness cannot be examined upon the assumption of hostility but only upon evidence to warrant a finding of hostility. In the instant case, when the appellant first asked to have the witness declared hostile, the trial court properly refused because the witness had not yet been shown to be hostile. The second request was also properly refused because the record reflects that Cummings's nature and manner was not hostile. Cummings freely answered the questions asked by the appellant.
Therefore, we find no abuse in the trial court's discretion in refusing to declare Cummings a hostile witness.
 II
Next, the appellant contends that the trial court erred when it failed to declare a mistrial when, during closing arguments, the prosecutor remarked that Cummings was not facing any charges and had not been given immunity from prosecution. The comment appears in the records as follows: *Page 551 
 "MR. LeMAISTRE: . . . I admire Robert Cummings. They can say what they want to, they can try to slander him every way they want to. Robert Cummings hadn't got any criminal charges against him. He hasn't been given immunity from prosecution.
 "MRS. HICKS: I object. He is testifying. You wouldn't let me go into that.
"THE COURT: Sustained.
 "MRS. HICKS: I move that the jury be instructed to disregard —
"THE COURT: (Interposing) All right, I'll do it.
 "Ladies and gentlemen, disregard anything that the district attorney said about Robert Cummings and his problems or lack of problems or whether he had any criminal charges against him, or criminal prosecutions, or immunity. Do not consider that in your deliberations. And anything about immunity in deciding this case I order it stricken from the record.
"MRS. HICKS: I also move for a mistrial.
"THE COURT: Denied." (R. 125-126.)
 " 'The general rule is that prejudicial statements, even though improper, are considered capable of being eradicated by the trial court in sustaining objections thereto or by appropriate instructions to the jury or both. Meredith v. State, 370 So.2d 1075 (Ala.Crim.App.), cert. denied, 370 So.2d 1079 (Ala. 1979).' Bui v. State, 551 So.2d 1094 (Ala.Crim.App. 1988).
 "Thus, even if the prosecutor's argument, which is quoted above, was improper, any prejudice which may have resulted from this remark was eradicated by the trial court's instruction to the jury to disregard this argument. The motion for mistrial was correctly denied. See Shadle v. State, 280 Ala. 379, 194 So.2d 538 (Ala. 1967)."
Holladay v. State, 549 So.2d 122, 131 (Ala.Cr.App. 1988), affirmed, Ex parte Holladay, 549 So.2d 135 (Ala. 1989), cert. denied, 493 U.S. 1012, 110 S.Ct. 575, 107 L.Ed.2d 569 (1989).
In this instance, the trial court sustained the appellant's objection and instructed the jury to disregard the prosecutor's comment. This action cured the improper statement. The trial court acted within its discretion when it denied the appellant's motion for a mistrial.
 III
The appellant also argues that improper remarks made by the trial court denied him a fair and impartial trial. Specifically, the appellant argues that, in refusing to declare a witness as hostile, the trial court, in stating that the witness's testimony had been adverse, implied that the jury could draw an unfavorable inference regarding the appellant. The statement made by the trial court was as follows: "His testimony has been adverse to your client but that does not make him hostile. He freely answered your questions. You called him, Mrs. Hicks." (R. 107.) Also, appellant's counsel argues that the trial judge refused to allow her to try this case by cutting her off with remarks such as, "You heard my ruling."
However, the record reveals that the appellant failed to object or to move to exclude any of the alleged improper statements made by the trial court.
 " 'Unless allegedly prejudicial remarks are objected to, they are not subject to review except where they are grossly improper. There must be either an objection, a motion to exclude, or a motion for the jury to disregard the statement before error is preserved.' Lokos v. State, 434 So.2d 818, 823 (Ala.Cr.App. 1982), aff'd, 434 So.2d 831 (Ala. 1983)."
Singleton v. State, 553 So.2d 689 (Ala.Cr.App. 1989). See alsoFisher v. State, [Ms. 1 Div. 948, March 1, 1991] (Ala.Cr.App. 1991).
Even if this issue had been preserved for review, there is no indication in the record that the appellant was prejudiced in any way by the statements which appellant's counsel calls to this Court's attention. See Gurganus v. State, 520 So.2d 170
(Ala.Cr.App. 1987). *Page 552 
 IV
The appellant contends that the pre-trial photograph identification procedure used by the State violated due process. Specifically, the appellant claims that Agent Jackson's identification of him was the result of an unduly suggestive pretrial photograph array.
However, the record indicates that this issue was first raised in the trial court by appellant's motion for a new trial. This motion was denied by the trial court on May 7, 1990, the same day it was filed.
This court has held: "A motion for new trial cannot take the place of an objection to the introduction of evidence. Pugh v.State, Ala. Cr. App., 355 So.2d 386, cert. denied, Ala.,355 So.2d 392 (1977)." Carpenter v. State, 400 So.2d 417
(Ala.Cr.App.), writ denied, Ex parte Carpenter, 400 So.2d 427
(Ala. 1981).
In the present case, the appellant failed to properly raise his issue before trial in a suppression motion or during trial by a timely and specific objection. Therefore, this issue has not been properly preserved for appellate review. See Daly v.State, 47 Ala. App. 681, 260 So.2d 412 (Ala.Cr.App. 1972), writ denied, Ex parte Daly, 288 Ala. 736, 260 So.2d 418 (Ala. 1972), cert. denied, 409 U.S. 874, 93 S.Ct. 123, 34 L.Ed.2d 127
(1972).
 V(a)
Next, the appellant contests the validity of the venire panel from which the ultimate petit jury was chosen. Prior to the appellant's trial on March 30, 1990, the appellant filed the following challenge to the array of the jury venire and objection to the venire:
 "CHALLENGE TO THE ARRAY OF THE JURY VENIRE AND OBJECTION TO JURY VENIRE
 "COMES NOW the above-named Defendant, who has been charged with murder in Barbour County, Alabama, and challenges the array of the MARCH, 1990 Jury Venire of Barbour County, hereinafter sometimes referred to as "said Jury," and objects to said Jury prior to trial and without waiving any other rights to which he is entitled, and shows the following facts:
 "1. The exclusion and underrepresentation of the identifiable class hereinafter referred to from the Jury list of said County and the said Jury Venire is in violation of the rights guaranteed the defendant by the Fifth Amendment and the due process and equal protection clauses of the Fourteenth Amendment to the United States Constitution.
 "2. Out of a 1984 population of persons in Barbour County totaling some 25,400 persons, in 1980 11,063 or 44% were black; and out of a 1984 population census of the City of Eufaula, there were 12,440 persons, of whom in 1980 4,279.36 or 34.4% were black. Unofficially, the City of Eufaula records a population of 15,000. The current jury venire of 140 persons lists the names of only 30 black persons, or 21.4% are black.
 "3. The exclusion of this group is in violation of the rights guaranteed the Defendant by 18 U.S.C.A. 243 and the due process and equal protection clauses of the Fourteenth Amendment of the United States Constitution.
 "4. In support of the foregoing allegations and to demonstrate the result of the unconstitutional composition of the current Barbour County, Eufaula Division, Jury Venire, a profile of the Jury Venire whose array is hereby challenged is attached hereto as Exhibit "A." Said Jury Venire is made up of 110 white persons and 30 black persons.
"WHEREFORE, Defendant prays:
 "(1) For a hearing at which he may introduce evidence in support of each and every allegation enumerated above;
 "(2) That the charges against this defendant be dismissed; and
 "(3) That this challenge to the array of the jury venire be granted."
We note that while this appellant was indicted and tried for the unlawful distribution of cocaine, this motion challenges the array of the March 1990 jury venire on defendant's charge of murder. Furthermore, the record on appeal does not contain the Exhibit A which appellant's motion describes *Page 553 
as "a profile of the jury venire whose array is hereby challenged. . . ."
In Robinson v. State, 560 So.2d 1130 (Ala.Cr.App. 1989), this Court stated:
 "According to Duren v. Missouri, 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979), the appellant has the burden to prove that the venire panel of prospective jurors does not represent a fair cross-section of the community. The appellant must prove, inter alia, that the system which was used to choose the given panel systematically excludes 'a substantial and identifiable segment of the total population of the community.' Duren; Rutledge v. State, 482 So.2d 1250, 1253-54
(Ala.Cr.App. 1983), rev'd on other grounds, 482 So.2d 1262 (Ala. 1984)."
"While a system of selecting potential jurors which systematically excludes a given group or segment of the community violates a person's rights, it is incumbent on the appellant to prove this result." Robinson, at 1132.
Furthermore, mere statistical disparity between the number of the group presumed eligible for jury service and the number actually included in the master list or box does not alone establish a primary inference of violation of the fair cross-section requirement. Smith v. State, 364 So.2d 1, 10
(Ala.Cr.App. 1978); Rutledge v. State, 482 So.2d 1250, 1254
(Ala.Cr.App. 1983), rev'd on other grounds, 482 So.2d 1262
(Ala. 1984).
The statistics quoted by the appellant do not lead to the conclusion that Barbour County jury selection system fails to comply with either statutory or constitutional requirements. Therefore, we find that this appellant failed to make a showing that the selection system of potential jurors prejudiced his ability to obtain a fair trial.
The appellant also filed two post-trial motions claiming that blacks were underrepresented on the jury venire. However, A.R.Crim.P. Temp. 16.2 requires that objections to the venire must be raised by a motion before trial. The comment to A.R.Crim.P. Temp. 16.2 expressly states: "Objections to the venire or to an individual grand juror or to the venue must be raised by such a motion before trial." Therefore, the appellant's two post-trial motions are waived. A.R.Crim.P. Temp. 16.2(a), (b), (c).
Here, this appellant failed to meet his burden of establishing discrimination as to the jury venire.
 (b)
In the appellant's final issue he also argues that there was an equal protection violation under the Fourteenth Amendment in that his arrest and subsequent conviction were the result of selective prosecution of blacks. However, when asked by the trial court if he had any evidence to support this claim, appellant's counsel responded, ". . . I have no evidence that the black people are the only ones that are doing drugs either." The trial court found no proof of selective prosecution and denied appellant's motion to dismiss the charge.
The appellant presented no evidence to indicate selective prosecution based upon race. It is apparent that appellant has not met his burden of proof in this regard. See Starley v. Cityof Birmingham, 377 So.2d 1131 (Ala.Cr.App. 1979), writ denied,Ex parte Starley, 377 So.2d 1134 (Ala. 1979), cert. denied,446 U.S. 956, 100 S.Ct. 2929, 64 L.Ed.2d 815 (1980).
For the above stated reasons, this cause is due to be, and it is hereby, affirmed.
AFFIRMED.
All the Judges concur.