The appellant, Fredrick Hampton, was convicted of first degree rape, first degree sodomy, and second degree kidnapping. He was sentenced to 20 years and six months' imprisonment on both the rape and sodomy convictions. He received a sentence of two years' imprisonment on the kidnapping conviction. He raises five issues on this appeal from those convictions.
The victim, L.C., testified that on the morning of March 5, 1991, she was standing at a bus stop in downtown Birmingham when she was abducted at gunpoint by three men in a car, was taken to a house where four other men were present, and was forced by all seven men to perform a variety of sexual acts against her will. The appellant took the stand in his own defense. He testified that L.C. voluntarily entered the car, agreed to "party" with him and the others, and willingly participated in sexual relations with some of his companions. He denied that he had any sexual contact with L.C.
 I
The appellant contends that the trial court erroneously allowed the State's expert witness to give an opinion on the ultimate issue regarding the rape charge. On direct examination of Dr. Mary Elizabeth Rutherford, an emergency room physician who examined L.C., the following occurred:
 "Q. [ASSISTANT DISTRICT ATTORNEY:] What did you observe during your vaginal examination?
 "A. She had a lot of bruising and swelling outside of the vagina. The right side of the peritoneal area was swollen and bruised and she also had a bruise under the urethra and a bruise at the very top of the opening to the vagina.
 "Q. Based on your training and experience in doing these sex cases, what opinion did you reach as to the injuries that you observed, what was the cause of those injuries?
 "[DEFENSE COUNSEL]: Objection. That calls for an issue for the jury to decide. It is an improper factual basis for this doctor to form that opinion — improper hypothetical — and we would object.
". . . .
"THE COURT: Overruled.
". . . .
 "Q. [ASSISTANT DISTRICT ATTORNEY:] Doctor, what were these injuries consistent with?
 "A. They were consistent with any kind of trauma to that area. Forcible intercourse could do this." R. 243-45.
The foregoing testimony did not invade the province of the jury. Moss v. State, 545 So.2d 230 (Ala.Cr.App. 1989). In Moss, the examining physician testified that the victim of the alleged rape had had recent sexual intercourse which "appeared to be forced." This court held:
 " 'Forcible compulsion' is an element of first degree rape. It has a specific legal meaning. Ala. Code (1975), § 13A-6-60(8). Here, the examining physician did not give his opinion on the presence or *Page 101 
absence of forcible compulsion. He did state his opinion regarding the cause of the injuries to the victim. 'The nature of the wound or injury, its probable cause and effect can be stated by expert medical witnesses, or witnesses shown to be familiar with such questions. . . .' Thomas v. State, 249 Ala. 358, 360, 31 So.2d 71 (1947)."
Moss v. State, 545 So.2d at 231. We see no difference between expert testimony that a victim's injuries were "consistent with . . . [f]orcible intercourse" and testimony that the injuries were the result of intercourse which "appeared to be forced." Neither conclusion invades the province of the jury.
 II
The appellant claims that he was "vicariously prejudiced" when the prosecution elicited evidence of his codefendant's post-arrest silence.
The appellant's trial was consolidated with that of his brother and codefendant, Timothy Hampton. On direct examination of Birmingham police investigator Mimi Moore, the assistant district attorney inquired whether the officer had spoken with Timothy Hampton on the day of his arrest. Officer Moore replied, "I attempted but he did not give a statement." R. 68.
After counsel for the appellant objected, the trial court stated, in the presence of the jury, "I'll tell the jury to disregard it. Do not let it be part of your consideration." R. 68. Then, outside the presence of the jury, the appellant's counsel moved for a mistrial and the trial court denied that motion, stating, "I've told this jury to disregard that remark. If you have any other curative remarks write [them] out." R. 70-71.
The appellant's counsel did not provide the court with any further curative instructions. Upon the jury's return, the court stated, "Ladies and gentlemen, I believe there was some response about the defendant [Timothy Hampton] didn't make a statement. Disregard that and do not let it be part of your consideration in deliberating guilt or innocence in this case." R. 76-77.
A reference to the accused's post-arrest silence "may be cured by prompt corrective action by the trial court."Houston v. State, 354 So.2d 825, 828 (Ala.Cr.App. 1977), cert. denied, 354 So.2d 829 (Ala. 1978).
 "Where the trial court immediately instructs the jury not to consider a fact, that instruction, in effect, removes or excludes that matter from the jury's consideration, and the prejudicial effect of the statement is deemed to be cured by such instruction. Bradley v. State, 450 So.2d 173, 176
(Ala.Cr.App. 1983); Richardson v. State, 374 So.2d 433 (Ala.Cr.App. 1979). The trial judge's immediate charge to the jury to disregard an impropriety raises a prima facie presumption against error. Kelley v. State, 405 So.2d 728 (Ala.Cr.App.), cert. denied, 405 So.2d 731 (Ala. 1981).
 " 'The entry of a mistrial is not lightly to be undertaken. It should be only a last resort, as in cases of otherwise ineradicable prejudice. Where error is eradicable a mistrial is too drastic and is properly denied. Woods v. State, 460 So.2d 291, 296 (Ala.Cr.App. 1984); Chillous v. State, 405 So.2d 58 (Ala.Cr.App. 1981).' "
Soriano v. State, 527 So.2d 1367, 1371 (Ala.Cr.App. 1988). Assuming that the appellant has a right to complain of the error of eliciting evidence of his codefendant's post-arrest silence (a question we expressly do not decide), we hold that any error was cured by the trial court's instructions, and that the drastic sanction of a mistrial was not warranted.
 III
The appellant also argues that he was entitled to a mistrial when the trial court misstated the evidence in such a way as to impeach the appellant's credibility as a witness.
The appellant testified that he did not have sex with L.C. and that he did not see his brother Timothy having sex with her. R. 391. On cross-examination of the appellant, the assistant district attorney inquired, "[N]either you nor Timothy ever had sex with [L.C.]?" The appellant answered, *Page 102 
"I don't know if Timothy did." R. 395. The following then occurred:
 "Q. [ASSISTANT DISTRICT ATTORNEY:] I thought you said a while ago that you knew for a fact that Timothy didn't?
 "[DEFENSE COUNSEL]: See, that's what I'm talking about. He's been continually doing that, stating things as facts, and assuming them in his questions that are not in evidence. It's improper and we object to it.
 "THE COURT: Overruled. . . . He asked him if Tim had sex with her and he said no.
"[DEFENSE COUNSEL]: He said he didn't know.
 "THE COURT: He said it then. Laurie [court reporter], go back to the records. He asked him prior to that, he said he didn't have sex with her and he said Tim didn't have sex with her.
"(Court reporter read back.)
"A. I didn't see him.
". . . .
 "[DEFENSE COUNSEL]: Please the Court, that's what he said, he didn't see him.
"THE COURT: Read the question and answer again.
"(Court reporter complied.)
"[DEFENSE COUNSEL]: I have a motion to make.
"THE COURT: When the jury is gone." R. 395-96.
Outside the presence of the jury, the appellant's counsel moved for a mistrial on the grounds that the trial judge had interjected himself into the examination of the appellant, had misstated the appellant's previous testimony, and had conveyed to the jury his opinion that the appellant had contradicted himself. R. 401. After additional argument from counsel, the trial judge made the following statement outside the presence of the jury:
 "THE COURT: Anything further? That record will prove that this man answered a question that he didn't have sex, and Timothy, his brother, didn't have sex with her. It's in that record. It will speak for itself.
 "[DEFENSE COUNSEL]: Are you denying the motion [for mistrial]?
"THE COURT: Sure." R. 403
The trial judge's recollection of the appellant's previous testimony was inaccurate. We have examined the record and we can find no instance in which the appellant said that his brother "didn't have sex" with L.C. The appellant testified only that he did not see his brother having sex with the prosecutrix. On further cross-examination after the foregoing exchange, the appellant testified that his brother Timothy told him that he, Timothy, had had sex with L.C. "He [Timothy] said he did, but I didn't see him." R. 397. Later, Timothy Hampton took the stand and admitted that he and L.C. had engaged in sexual intercourse, but he claimed that the act was done with L.C.'s consent.
The trial judge was not only mistaken about the appellant's previous testimony, but he refused to concede that mistake after the court reporter read back the question and answer. The trial judge evidently thought that the appellant had denied his brother's sexual involvement with the prosecutrix at some point in the testimony other than at that point read back by the court reporter. He did not, however, acknowledge the possibility that he may have been mistaken. Nevertheless, we hold that the court's error did not warrant the extreme action of granting a mistrial for two reasons.
First, the trial court did not continue to insist, in thepresence of the jury, that the appellant had contradicted himself after the court reporter read back the testimony. The court made only two statements in the presence of the jury indicating his belief that the appellant had testified inconsistently. The first statement was: "He [the prosecutor] asked him [the appellant] if Tim had sex with her and he [the appellant] said no." Although that statement was factually incorrect, it was legally permissible. It was made immediately after overruling defense counsel's objection and was offered as an explanation for the court's ruling. *Page 103 
 "The law does not prohibit the trial judge from giving trial counsel his reasons in making certain rulings as to the law applicable to the case. . . . Bedingfield v. State, [47 Ala. App. 677, 681, 260 So.2d 408, 412 (1972)].
 "In 23 C.J.S., Criminal Law § 993, p. 1024, it is said, 'Generally, it is not improper comment on the evidence for the judge to explain his ruling on a matter of law, and he may refer to testimony and state its legal effect, in deciding a point raised during the trial.' "
McDonald v. State, 340 So.2d 80, 83 (Ala.Cr.App.), cert. denied, 340 So.2d 84 (Ala. 1976). See also Tombrello v. State,421 So.2d 1319, 1322-23 (Ala.Cr.App. 1982).
The second statement made in the presence of the jury was: "He [the appellant] said it then. Laurie [court reporter], go back to the records. [The prosecutor] asked him prior to that, he said he didn't have sex with her and he said Tim didn't have sex with her." (Emphasis added.) This statement, like the first, was legally permissible because it constituted an explanation for the court's ruling. Although the trial judge obviously continued to believe that the appellant had contradicted himself, he made no further statement to that effect in the presence of the jury after the court reporter repeated the appellant's testimony. The jury could well have interpreted the judge's silence after the repetition of the evidence as a tacit concession that he, the judge, had been mistaken, and that he would leave the matter to the judgment of the jury.
Under the circumstances, the best course of action would have been for the trial judge to have instructed the jury that the court's recollection of the evidence was to be disregarded and was not to be considered by the jury, and that instead, the jurors should determine from their own recall of the testimony whether the appellant had made inconsistent statements. Although the court gave no such instruction at that time, the court's oral charge at the conclusion of the case did instruct the jurors that they were
 "the judges of the facts. I am the judge of the conduct of the trial and the law. I have nothing whatsoever to say about the facts. I heard this case for the first time just like you did. I didn't know what was coming in, just as you didn't. I didn't see it, and you didn't see it. There will be twelve of you, and there is one of me. This jury is much more qualified to find the facts than I am.
". . . .
 "I will not say well, the first witness, or the third witness, or the fifth witness, whatever I think is telling the truth or not. That is the jury's function. The credibility or believability of the witnesses is for the jury to determine. . ..
". . . .
 "Ladies and gentlemen of the jury, you are also the sole judges of the credibility of the witnesses. The weight of credibility to be given to the testimony is for the determination of the jury. The court has nothing to do with that. . . .
". . . .
 "Ladies and gentlemen, I do not want you to believe or think from anything I have said in this charge, or otherwise, or in any ruling that I have made, that I think one way or the other about the facts of the case." R. 597-98, 599, 618, 622.
Second, we find that a mistrial was not warranted because the trial court's error was not so fundamental as to vitiate the result of the trial. "[A] mistrial 'specifies such fundamental error in a trial as to vitiate the result,' Diamond v. State,363 So.2d 109, 112 (Ala.Cr.App. 1978), and should be granted only when a 'high degree of "manifest necessity" ' is demonstrated, Wadsworth v. State, 439 So.2d 790, 792
(Ala.Cr.App. 1983), cert. denied, 466 U.S. 930, 104 S.Ct. 1716,80 L.Ed.2d 188 (1984)." Garnett v. State, 555 So.2d 1153, 1155
(Ala.Cr.App. 1989).
Even if, as the appellant argues, the trial court's comments constituted "impeachment" of the appellant (and we do not hold that they did), the impeachment was on an immaterial matter. Jurors are entitled to disregard the testimony of a witness *Page 104 
only if they believe that the witness has willfully sworn falsely to any material fact in the case. Wilson v. State,243 Ala. 1, 7, 19, 8 So.2d 422 (1942). It was undisputed that the appellant's brother did engage in sexual intercourse with the victim. Therefore, even if the jury believed that the appellant had contradicted himself on that question, it would not have been authorized to disregard the remainder of the appellant's testimony.
Because Timothy Hampton's sexual contact with the prosecutrix was undisputed and immaterial in this particular case, because the court did not continue to insist that the appellant had contradicted himself after the court reporter's repetition of the testimony, and because the court made it clear to the jury in its final charge that the jurors were the sole judges of a witness's credibility, the denial of the motion for mistrial was not reversible error.
 IV
The appellant argues that the trial judge continually interjected himself into the proceedings by questioning witnesses, interrupting defense counsel, and commenting on evidence. He claims that the cumulative effect of the judge's interruptions entitled him to a mistrial.
We have examined each of the instances cited by the appellant in which the trial judge interrupted the proceedings and we find that they either do not amount to error because they were legitimate explanations for the ruling of the court or that they were not objected to. A reading of the entire transcript leaves no doubt that this trial judge was no mere passive observer of the proceedings, waiting to be asked for a ruling. On the contrary he was an active, often vociferous, referee of a heated trial. Defense counsel was not alone in being the subject of interruption by the court. The trial judge also intruded upon the assistant district attorney's questioning of witnesses to the same extent.
For example, when the prosecutor was questioning Dr. Rutherford about her examination of the prosecutrix, who was then six months pregnant, the physician stated that she "listened to the baby's heart tones to make sure the baby was okay." The court interrupted with the comment, "That has no probative value." R. 245. When the assistant district attorney asked Dr. Rutherford whether she treated any injuries to the prosecutrix's head, the court asked, "What are you going off on this for?" The prosecutor replied, "I would just like to know if she did that," and the court said, "We can't have inquiries just because you would like to know. You must be able to substantiate something." R. 246.
 "Quite clearly, it is the duty of the trial judge 'to be thorough, courteous, patient, punctual, just, and impartial. Yet he is not required to be a "Great Stone Face" which shows no reaction to anything that happens in his courtroom. Allen v. State, 290 Ala. 339, 276 So.2d 583 (1973).' Gwin v. State, 425 So.2d 500, 506-07
(Ala.Cr.App. 1982), cert. quashed, 425 So.2d 510
(Ala. 1983). A trial judge is not 'a mere moderator' of a trial. Sprinkle v. State, 368 So.2d 554, 562
(Ala.Cr.App. 1978), cert. quashed, 368 So.2d 565
(Ala. 1979). Instead, he has a vast array of responsibilities, including that of protecting witnesses 'from improper questions and from harsh or insulting demeanor.' See Ala. Code 1975, § 12-21-141. In discharging his responsibilities, the trial judge may 'properly caution, correct, advise, admonish, and, to a certain extent, criticize counsel during the case, provided it is done in such manner as not to subject counsel to contempt or ridicule, or to prejudice accused in the minds of the jurors,' 23A, C.J.S., Criminal Law § 1182 (1989)."
Arnold v. State, 601 So.2d 145, 153 (Ala.Cr.App. 1992). See alsoDennis v. State, 584 So.2d 548, 551 (Ala.Cr.App. 1991).
With the exception of the comments discussed in Part III, supra, all of the court's references to the testimony were accurate. The trial court's admonitions to counsel — both for the defense and for the State — were strong, but fair and evenhanded. There is no evidence in the record that defense counsel was admonished without *Page 105 
cause or that he was treated more severely than counsel for the State.
 V
The facts of this case closely resemble those of Ex partePettiway, 539 So.2d 372 (Ala. 1988). There, the Alabama Supreme Court reversed this Court's decision in Pettiway v. State,539 So.2d 368 (Ala.Cr.App.), and held that the accused was entitled to an instruction on unlawful imprisonment as a lesser included offense of kidnapping.
Ex parte Pettiway holds that a charge on unlawful imprisonment in the second degree must be given when there is any evidence that the victim was not "abducted" within the meaning of Ala. Code 1975, § 13A-6-40(2), because he or she initially agreed to accompany the accused but was thereafter "restrained" against his or her will within the meaning of Ala. Code 1975, § 13A-6-40(1). In this case, the appellant's testimony that L.C. voluntarily entered the vehicle in which he was riding provided the "evidence to raise a jury question as to whether he was guilty of a restraint . . . as opposed to being guilty of an abduction." Ex parte Pettiway,539 So.2d at 374 (emphasis in original).
The Attorney General does not argue that Pettiway is inapplicable, only that the appellant did not preserve the error of the court's failure to charge on the lesser offense. We hold that the issue was preserved.
Counsel for the appellant submitted written requested charges outlining the lesser offense of unlawful imprisonment in the second degree. During a charge conference at the close of the State's case, the trial court announced that it would not give those charges. Counsel for the appellant inquired whether the court would allow him "at the appropriate time to make timely objections. I would rather wait until all the evidence is in. If you want me to I can." The court replied, "I won't insist." R. 310.
At the conclusion of the court's oral charge, the appellant objected to the court's failure to instruct on unlawful imprisonment, R. 629, and the court replied, "I gave you an exception to not giving it. I didn't give it and I didn't intend to." R. 630.
After the jury had been deliberating for some time, it sent word that it "would like to hear the definition of second degree kidnapping. In addition, if the victim gets in the car willingly and then asks to be let go at some point, is this second degree kidnapping?" R. 638. Appellant's counsel stated, "We again renew our request for a lesser-included charge on false imprisonment based on the jury's question." R. 638.
The court clearly understood the basis for counsel's objection, as shown by the following statement:
 "THE COURT: If I'm in error, I'm in error. To do that now would be suggesting to the jury. They might then come back with a second degree kidnapping where they might otherwise throw it out. I will leave it as it is. I will define second degree kidnapping and nothing more." R. 639.
The court's failure to charge on unlawful imprisonment in the second degree as a lesser included offense of kidnapping in the second degree constitutes reversible error.
The appellant's convictions for rape in the first degree and sodomy in the first degree are affirmed. The conviction for kidnapping in the second degree is reversed, and the cause is remanded for proceedings consistent with this opinion.
AFFIRMED IN PART;
REVERSED AND REMANDED IN PART.
All Judges concur. *Page 106