Lester Bang, the appellant, was convicted of kidnapping in the second degree and was sentenced to 20 years' imprisonment. On this appeal from that conviction he raises three issues.
On November 18, 1991, A.D. drove from her home in Robertsdale, Alabama, to a nearby grocery store. She left her car unlocked while she made a purchase in the store. When she returned to her vehicle and began to drive away, A.D. heard a male voice from the back seat of her car say, "Don't be afraid. I'm not going to hurt you. I want you to take me to Mississippi." R. 86. After that, A.D. saw a gloved hand holding a knife and she felt the point of the knife in her side. A.D. complied with directions to drive to Mississippi, where she was raped and robbed by her assailant.
 I
The appellant contends that the State used its peremptory strikes in a racially discriminatory manner, in violation ofBatson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69
(1986), and Ex parte Branch, 526 So.2d 609 (Ala. 1987).
There were four black prospective jurors on the venire. The State struck two black veniremembers, number 49 and number 44. The defense struck one black veniremember. One black served on the jury. The State's last strike, juror number 44, served as the alternate juror.
Juror number 49, C.K., informed the court out of the hearing of the other jurors that he had been too embarrassed to answer a voir dire question on the subject, but that he had been previously convicted for misdemeanor possession of marijuana. R. 67. The assistant district attorney struck juror number 49 because of this conviction and because "he [was] a younger male." R. 76.
The veniremember's prior criminal conviction constitutes a valid race-neutral reason for the strike. Wilsher v. State,611 So.2d 1175 (Ala.Cr.App. 1992). Although the age rationale is "highly suspect," Ex parte Bird, 594 So.2d 676, 683 (Ala. 1991), "when both a suspect reason and a valid reason have been given, the court may rely on the valid reason and need not address the suspect reason." Powell v. State, 608 So.2d 411, 414
(Ala.Cr.App. 1992).
The prosecution struck juror number 44, E.J., because of "her [in]ability to pay attention, . . . her difficulty hearing . . . and [a concern that she] may have some health problems." R. 76. Those reasons are comparable to a challenge for cause and are race-neutral on their face. "While the reason offered by the prosecutor for a peremptory strike need not rise to the level of a challenge for cause, the fact that it corresponds to a valid for-cause challenge will demonstrate its race-neutral character." Hernandez v. New York, ___ U.S. ___, ___,111 S.Ct. 1859, 1868, 114 L.Ed.2d 395 (1991) (citation omitted).
In addition, the reasons are supported by both the voir dire proceedings and the observations of the trial judge. CompareEx parte Yelder, [Ms. 1910345, August 14, 1992], 1992 WL 192836 (Ala. 1992) (prosecutor's explanation for strike belied by veniremember's responses on voir dire); Jackson v. State,594 So.2d 1289, 1293-94 (Ala.Cr.App. 1991) (same).
E.J. initially stated, "My husband is deceased. And when I was working, I was working at the senior citizens home, but I got sick and I had to quit." R. 28. Later during voir dire, the following occurred:
 "[ASSISTANT DISTRICT ATTORNEY]: Judge, could we possibly . . . see about asking E.J., the elderly black lady, a few more questions? I'm not sure how well she's hearing. What's — she said she quit work because she was sick, and that just concerns me. But I hated to —
 "THE COURT: Don't you think you've got all you need to know about Ms. J? Based on her age, I think I agree.
 "[ASSISTANT DISTRICT ATTORNEY]: I'm worried about Batson. *Page 108 
 "THE COURT: Yeah, you might want to. She raised her hand a while ago when you asked if anyone had been on grand jury.
". . . .
 "[ASSISTANT DISTRICT ATTORNEY]: I need to talk to Ms. J.
 "THE COURT: If you strike on the inability to hear, I think I would have to — " R. 59-60, 66.
When the prosecution moved to challenge E.J. for cause because of her "physical [in]ability," the following occurred:
 "THE COURT: I don't believe she's challengeable for cause on that basis. You may strike her, I think you would survive a Batson charge on the grounds of her perhaps diminished attentiveness, but I don't think it's a challenge for cause.
". . . .
 "[ASSISTANT DISTRICT ATTORNEY]: Could we — I guess we can do it later. My concern is I would like it on the record because the record doesn't show it, you could tell by her demeanor she was having difficulty.
 "THE COURT: If you strike her and he raises Batson, all that goes of record. If not, it doesn't." R. 70.
During a hearing on the Batson motion, the defense argued that the State's reasons for striking E.J. were a sham or pretext because the State did not strike a white juror with a hearing problem. Defense counsel maintained that the court had "made ample arrangements [for the hearing-impaired white juror] to sit in the very first seat on the front row so she'll be able to hear. . . . So the difference between the two ladies is one is black and one is white. The white one is on the jury. The black one has been struck by the State." R. 74. The trial court responded:
 "All right. The State asked for an opportunity to investigate [E.J.'s] attentiveness, and I indicated at that time that if Ms. J. were struck and challenged on the grounds of Batson, that it was obvious to this Court that Ms. J. was not hearing much of what was said and certainly not responding to many things. I pointed out that when asked about being on the grand jury, she raised her hand and there was — there were no further questions directed to her on that issue. And she did not make the opportunity available, although she had ample time to remind counsel that she had so indicated. I also noticed that when she was explaining who she was and her status, that she had difficulty in speaking loudly enough for most of us to hear her." R. 75.
The trial court's ruling on the Batson motion was not clearly erroneous and will be upheld. "We appreciate that it is impossible to know what is in the mind of another person, and that it is possible that, in stating his reasons for striking a black member of the venire, a prosecutor may give a reason that is not the true reason, but we are convinced that the trial judges in our system are in a much better position than appellate judges to decide whether the truth has been stated."Scales v. State, 539 So.2d 1074, 1075 (Ala. 1988).
The fact that the State did not strike a hearing-impaired white person but did strike a hearing-impaired black person does not, under the particular facts and circumstances present here, indicate that the State's reason for striking the black veniremember was pretextual. The record reflects that the white veniremember with the hearing problem approached the trial court during a private bench conference and volunteered the following information:
 "A VENIREMAN: I do have some loss of hearing. I hear, like, your [the Court's] voice great, but a feminine voice, I don't always hear everything that she had to say.
 "THE COURT: All right. The distance, the biggest distance that would be involved would be from the back of that box. If we asked witnesses to speak up, do you believe you would be able to hear them?
"A VENIREMAN: If they speak up, I could.
 "[DEFENSE COUNSEL]: Or the possibility if she ends up on the jury, we could move her to the first chair. *Page 109 
 "THE COURT: If you're on the jury, we will put you close to the box.
"A VENIREMAN: Okay." R. 66-67.
Because the white juror volunteered information about her hearing problem, the assistant district attorney could conclude that this juror recognized her own limitations, did not mind admitting her handicap, and would speak up if she were unable to hear the evidence later presented at trial. In contrast, Ms. E.J.'s hearing impairment was evident to the prosecutor and the trial judge, but that juror did not acknowledge her handicap. The assistant district attorney could conclude that Ms. E.J. was either unaware of her own impairment or was too self-conscious to request assistance.
The absence of questions or meaningful questions on voir dire may indicate that an explanation is merely a sham or pretext.Ex parte Bird, 594 So.2d at 683. However, we note that the prosecutor asked for the opportunity to question E.J. about her hearing difficulty and apparently abandoned that request only when the court stated, "if Ms. J. were struck and challenged on the grounds of Batson, . . . it [is] obvious to this Court that Ms. J. was not hearing much of what was said and certainly not responding to many things." R. 75.
The assistant district attorney was not required "to engage in extensive and potentially alienating voir dire" after the trial judge assured the prosecutor that he, too, had noticed Ms. E.J.'s inattentiveness and hearing loss and that a peremptory strike of that juror would survive a Batson
challenge. See Wilsher v. State, 611 So.2d at 1183.
 II
The appellant was tried only for the kidnapping of A.D. He argues that the trial court erred by denying his motion in limine seeking to exclude evidence that he had also raped and robbed A.D. after he forced her to drive to Mississippi.
The kidnapping, rape and robbery of A.D. constituted one continuous criminal occurrence. Details of the two uncharged crimes were admissible, notwithstanding the fact that they occurred in another state and were not prosecuted in Alabama.
In Dutton v. State, 434 So.2d 853 (Ala.Cr.App. 1983), a prosecution for the robbery of a convenience store clerk, this court held that "[t]estimony concerning the victim's subsequent kidnapping, rape, and forced performance of oral sex was admissible as being part of one continuous transaction, or one criminal occurrence." 434 So.2d at 855. "No matter how many distinct crimes may be involved, all the details of one continuous criminal occurrence or adventure may be given as part of the offense with which the defendant is charged."Coleman v. State, 487 So.2d 1380, 1385 (Ala.Cr.App. 1986). See also Blanco v. State, 515 So.2d 115, 120 (Ala.Cr.App. 1987) (in prosecution for trafficking in cocaine, evidence that marijuana was also present in the defendant's truck admissible).
This case is distinguishable from Ex parte Smith,581 So.2d 531 (Ala. 1991). There, the Alabama Supreme Court held that the probative value of testimony that the accused attempted to rape one woman several hours before he sexually assaulted and murdered another woman was outweighed by its prejudicial effect. The evidence admitted here differs from the testimony held inadmissible in Smith in two respects.
First, the non-charged crimes in this prosecution were perpetrated against the same victim as the charged crimes. InSmith, the collateral crime involved a separate victim. Second, the probative value of the testimony here — that A.D.'s identification of the appellant was reliable because she had adequate time to observe him during a face-to-face sexual assault — was apparent in light of the appellant's defense of alibi and mistaken identity. In Smith, the alleged probative value of the collateral crime — that the accused was motivated to sexually assault and kill a second victim because he had been impotent during an attempt to rape an earlier victim — was "dubious" in view of other evidence that the accused "reached a climax, or orgasm, as a *Page 110 
result of the [first] sexual act." Ex parte Smith,581 So.2d at 536.
 III
The appellant contends that the trial court erred by refusing to charge the jury on the lesser included offenses of menacing and unlawful imprisonment.
Those crimes may, under certain circumstances, constitute lesser included offenses of kidnapping. See Ex parte Pettiway,539 So.2d 372 (Ala. 1988) (unlawful imprisonment a lesser included offense of kidnapping); Hampton v. State, 620 So.2d 99
(Ala.Cr.App. 1992) (same). See also Ex parte Staten, [Ms. 1911114, August 14, 1992] ___ So.2d ___ (Ala. 1992) (assault a lesser included offense of attempted kidnapping).
The difference between kidnapping and unlawful imprisonment lies in the distinction between "abduction," as defined in § 13A-6-40(2), and "restraint," as defined in § 13A-6-40(1). Exparte Pettiway, 539 So.2d at 374. In Pettiway and Hampton, there was evidence that the victim had initially agreed to accompany the accused and that she was not therefore, "abducted" within the meaning of the § 13A-6-40(2), but that she was later "restrained" against her will within the meaning of § 13A-6-40(1), in violation of the unlawful imprisonment statute. Here, there was absolutely no evidence that the victim consented to drive the appellant to Mississippi.
The trial judge "shall not charge the jury with respect to an included offense unless there is a rational basis for a verdict convicting the defendant of the included offense." Ala. Code 1975, § 13A-1-9(b). There was no rational basis for a verdict on any lesser offense here. The victim testified that she was accosted in her car and was forced to drive to Mississippi. The appellant challenged the victim's identification of him as her assailant and interposed an alibi defense. Under the circumstances, the appellant was either guilty of kidnapping or not guilty of any crime.
The following observation made by this court in Davis v.State, 470 So.2d 1340 (Ala.Cr.App. 1985), applies here:
 "The events we have recited could hardly be considered mere restraint, as required for an unlawful imprisonment, but rather, if anything, constituted an abduction. Therefore, the court did not have a 'rational basis' to instruct the jury on this lesser offense. Wyllie v. State, 445 So.2d 958 (Ala.Cr.App. 198[3]). 'When the evidence clearly shows that the appellant is either guilty of the offense charged, or innocent, the charge on a lesser included offense is not necessary or proper.' Perry v. State, 455 So.2d 999
(Ala.Cr.App. 1984)."
Davis v. State, 470 So.2d at 1342.
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.